STATE OF OHIO, Plaintiff-Appellant,

v.

PETERSON, LOWRY, RALL, BARBER & ROSS et al., Defendants-Appellees.

No. 79–1762.

United States Court of Appeals, Tenth Circuit.

April 24, 1981.

Rehearing and Rehearing En Banc Denied May 26, 1981.

J. Vernon Patrick, Jr., Birmingham, Ala. (Thomas J. Gallo and William R. Sylvester, Birmingham, Ala., with him on the brief) of Berkowitz, Lefkovits & Patrick, Birming-

ham, Ala. (and Harry L. Hobson and William J. Baum, Jr. of Holland & Hart, Denver, Colo., with him on the brief), for plaintiff-appellant.

Robert H. Wheeler, Chicago, Ill. (Donald J. McLachlan and John W. Treece, Chicago, Ill., with him on the brief) of Isham, Lincoln & Beale, Chicago, Ill. (and Jeffrey A. Hyman, Denver, Colo., with him on the brief), for defendants-appellees Peterson, Ross, Rall, Barber & Seidel and individually-named defendants-appellees except Timothy G. Lowry.

Mitchell A. Orpett, Chicago, Ill. (Donald M. Haskell and James J. Widland, Chicago, Ill., with him on the brief) of Haskell & Perrin, Chicago, Ill. (and Raymond J. Connell of Yegge, Hall & Evans, Denver, Colo., with him on the brief), for defendant-appellee Timothy G. Lowry.

Before SETH, Chief Judge, McKAY, Circuit Judge, and PALMIERI, District Judge*.

PALMIERI, District Judge.

The State of Ohio appeals from a summary judgment dismissing its action in securities fraud as barred by the statute of limitations. Ohio brought this action under § 20 and § 10(b) of the Securities Exchange Act of 1934[1] against Peterson, Lowry, Rall, Barber & Ross, a Chicago law firm, and Timothy G. Lowry, a former member of that firm, on October 7, 1976 in the District of Colorado. The district court found, in a thorough opinion, after permitting Ohio to amend its complaint and after a full opportunity for discovery had been afforded the parties,[2] that the applicable three-year statute of limitations had run. This decision followed an earlier appellate disposition in the case by this court which resolved certain procedural problems but left the limitations question open for decision on a fresh record. *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454 (10th Cir. 1978).

### The Factual Background

On April 17 and May 1, 1970, Ohio bought two promissory notes of King Resources Company (KRC) for a total of $8 million as part of its investments in commercial paper. Each had a two-year maturity. KRC was involved in oil, gas, and other natural resource ventures. Its bankruptcy in 1971 entailed creditor and investor losses of many millions of dollars. On November 16, 1970, the Securities and Exchange Commission filed a complaint in the Southern District of Ohio against the broker who handled the sale of the notes to Ohio and also against KRC, John M. King (KRC's founder, former chairman and major stockholder), and numerous others, alleging fraud in the sale of KRC securities. *SEC v. Crofters*, 351 F.Supp. 236 (S.D.Ohio 1972). On the basis of the S.E.C.'s complaint, later in 1972 Ohio brought an action in securities fraud against fifteen defendants, including KRC, John M. King, and KRC's accounting firm. *See Ohio v. Crofters*, 75 F.R.D. 12 (D.Colo.1977). Both *SEC v. Crofters* and *Ohio v. Crofters* dealt with the same transactions which form the basis of the case at bar.

---

* The Honorable Edmund L. Palmieri, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

1. While the appellant also made a claim under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q, it is not of any significance for the purpose of our analysis because of the substantial similarity between this statute and Rule 10b–5 under the Securities Exchange Act of 1934. Moreover, there is considerable doubt as to whether a private right of action exists under § 17(a) of the 1933 Act. See *Woods v. Homes & Structures of Pittsburg, Kansas*, 489 F.Supp. 1270, 1284–88 (D.Kan.1980), where the court reviewed conflicting authorities in detail and came to the conclusion that no private action exists. The Supreme Court has not yet resolved the issue. See *Aaron v. Securities and Exchange Commission*, 446 U.S. 680, 689, 100 S.Ct. 1945, 1951, 64 L.Ed.2d 611 (1980). Our decision today with respect to § 10(b) of the 1934 Act would apply equally to § 17(a) of the 1933 Act, if a private cause of action were assumed to exist under the latter statute.

2. Although Ohio complains that its right of discovery had been severely restricted in this case, it nevertheless reviewed over 6,000 documents from appellees' files and obtained copies of some 1,500 pages, in addition to taking depositions of Lowry and Herbert C. Loth, Jr., a member of the Peterson firm.

At the time of the fraud alleged in *Ohio v. Crofters*, the appellee law firm represented KRC, and appellee Lowry was KRC's general counsel and a member of its board of directors.[3] There appears to be no doubt that King dominated and controlled KRC and that Lowry was closely involved with him in numerous transactions. Although Ohio failed to join appellees as defendants, their possible role in frauds involving KRC did not escape other plaintiffs. Lowry and the firm were named as defendants in at least eleven other suits concerning KRC. Many of these suits were consolidated with *Ohio v. Crofters* after it was transferred by the Judicial Panel on Multi-district Litigation to the District of Colorado on November 17, 1972. *See In re KRC Securities Litigation*, 352 F.Supp. 975 (Jud.Pan.Mult. Lit.1972).

Exhibits in the record indicate that the KRC lawsuits received extensive publicity almost from the time of the initial collapse of KRC. Lowry was prominently mentioned in a number of such articles. The publications included the nationally circulated *Wall Street Journal* and local newspapers in Ohio, Texas and Colorado.

Internal memoranda from the Ohio Attorney General's office produced on discovery reveal that Lowry's possible involvement had come to the attention of Ohio's lawyers in 1972 or early in 1973. A note from the Ohio files made by Richard N. Patterson, then an Assistant Attorney General, refers to Lowry as "active in the inflation"—presumably a reference to the fraud-

ulent inflation of KRC's stated assets. A June 1973 memorandum reflects a call received by the Attorney General's office about Ohio's willingness to settle a claim against Lowry's director's liability policy.[4]

An involuntary petition in bankruptcy had been filed against KRC on August 18, 1971, in the Northern District of Texas. After venue was changed to the District of Colorado, the trustee in bankruptcy, acting on behalf of KRC's creditors, applied for permission to sue Lowry and the Peterson firm. Ohio was a major creditor and active participant in the bankruptcy proceeding. The trustee's proposed complaint, filed in the bankruptcy proceeding on August 21, 1973,[5] alleged that Lowry and the firm had conspired to defraud KRC of $1.1 million from December of 1968 through October of 1970—the period during which Ohio had purchased its KRC notes.

Ohio argues that the statute of limitations in its fraud action against appellees should be tolled until January 5, 1976, the date when Ohio claims it first discovered the fraud by Lowry and the firm. Ohio says that on this date Lowry revealed in a deposition that a sale which he had certified in 1970 as genuine was in fact subject to a secret buy-back agreement, a copy of which Lowry had hidden in his firm's safe in Chicago and later destroyed. Ohio, noting that it could not have deposed Lowry earlier because of a court-imposed stay of discovery, claims that despite its diligence it could not have known of Lowry's involve-

---

3. Ohio's claim against the firm is based primarily if not entirely upon vicarious liability for Lowry's acts. Though other firm members were named as individual defendants, we find no issue on this appeal which depends upon independent liability of the firm or any of its members. In our discussion below, any references to the acts of Lowry must be understood to apply equally to the firm. Additionally, it is emphasized that neither this court nor the court below has made any adjudication on the merits of the various claims of fraud, concealment, and other actions attributed to Lowry. Any discussion of these matters in this opinion must be understood to refer to claims or allegations and not to findings of fact or conclusions of law by this court.

4. Ohio's present claim under § 20, 15 U.S.C. § 78t, relates to Lowry's statutory liability as a director of KRC.

5. The court below chose this date as the point at which, "given all the other information which Ohio had, the conclusion is irresistible that, in the exercise of due diligence, Ohio should have realized that its cause of action embraced Mr. Lowry and his law firm." On this basis, Ohio's action would be barred after August 21, 1976, a month and a half before Ohio filed the present action.

ment[6] until Lowry's deposition. Appellees offer a different explanation for Ohio's delay. They note that Patterson, referring to the KRC bankruptcy proceeding in an internal memorandum of the Attorney General's office dated April 11, 1973, said that "our negligence in this case is stunning," and added: "I cannot emphasize more strongly . . . the fiasco further apathy might engender."

## I.

■ Since there is no federal statute of limitations applicable to private actions under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and S.E.C. Rule 10b–5 promulgated thereunder, the limitations period is supplied by the law of the forum state. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n.29, 96 S.Ct. 1375, 1389, 47 L.Ed.2d 668 (1976). The district court held that the applicable state statute was Colo.Rev.Stat. § 13–80–109 (1973), and that ruling has not been appealed. Section 13–80–109 provides: "Bills of relief on the ground of fraud shall be filed within three years after the discovery by the aggrieved party of the facts constituting such fraud, and not afterwards."

■ The rule in this circuit has been that in fraud cases only the limitations *period* is borrowed from state law, whereas the tolling rule is supplied by federal jurisprudence. *Esplin v. Hirschi*, 402 F.2d 94, 103 (10th Cir. 1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). As we noted not long ago, *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 (10th Cir. 1980), the *Esplin* rule appears to conflict with certain language in *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). There, the Supreme Court held that under the borrowing statute for federal civil rights cases, 42 U.S.C. § 1988, a federal judge was barred from exercising equitable power to toll the limitations period where the borrowed state statute contained no provision for tolling under the circumstances presented and further provided: "No court shall extend the time limited by law for the commencement of an action." *Id.*, 446 U.S. at 486, 100 S.Ct. at 1796. Section 1988 applies only to the civil rights provisions of Title 18 and Title 42, United States Code. There is no analogous borrowing statute applicable to implied private actions under the Securities Exchange Act of 1934. To apply the *Tomanio* rule by analogy to cases where federal courts borrow a state limitations period as a matter of judicial convenience would in effect overrule[7] *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), a decision whose continuing vitality is attested by the many cases relying upon it in § 10(b) private actions.[8] We do not believe the Supreme Court intended that such a significant consequence should be attached *sub silentio* to its decision, especially since the precedents cited by the Court in *Tomanio* all deal with civil rights cases under § 1988. *Board of Regents v. Tomanio, supra*, 446 U.S. at 483, 100 S.Ct. at 1794.

Another reason for standing by our decision in *Esplin v. Hirschi* is the question (left unanswered by *Tomanio*) of how deeply into state case law a federal court deciding a federal cause of action must go in order to borrow a state limitations period. *Tomanio*

---

6. Ohio claims late discovery only of Lowry's personal role in the bogus sale. Ohio knew of the fraudulent nature of the sale itself no later than 1972.

7. We note that the state statute before the Court in *Holmberg*, a predecessor of the New York statute involved in *Tomanio*, provided: "A court or judge is not authorized to extend the time fixed by law within which to commence an action . . ." § 99(1), N.Y.Civil Practice Act of 1920, as amended by 1938 N.Y.Laws c. 112.

8. *See e. g., Gaudin v. KDI Corporation*, 576 F.2d 708 (6th Cir. 1978); *Cook v. Avien, Inc.*, 573 F.2d 685 (1st Cir. 1978); *United California Bank v. Salik*, 481 F.2d 1012 (9th Cir. 1973), *cert. denied*, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973); *Parrent v. Midwest Rug Mills, Inc.*, 455 F.2d 123 (7th Cir. 1972); *Vanderboom v. Sexton*, 422 F.2d 1233 (8th Cir. 1970), *cert. denied*, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); *Hooper v. Mountain States Securities Corporation*, 282 F.2d 195 (5th Cir. 1960), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693(1963).

stays within the four corners of the state statute. Here, however, Colo.Rev.Stat. § 13–80–109 computes the limitations period from plaintiff's discovery of the fraud without any requirement that plaintiff exercise reasonable diligence. For the diligence requirement, one must look to Colorado decisions. *Greco v. Pullara*, 166 Colo. 465, 444 P.2d 383 (1968). Similarly, one question we must resolve in this case concerns the respective roles of judge and jury on the issue of diligence. Colorado law would apparently leave it to a jury. *Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970); *Norton v. Leadville Corp.*, Colo. App., 610 P.2d 1348 (1980). We think, however, that the law of plaintiff's diligence in private actions under § 10(b) can better develop by reference to other federal securities cases rather than by analogy to Colorado decisions on the diligence of plaintiff in discovering grounds for an action in medical malpractice. *See Owens v. Brochner, supra*, (brain tumor); *Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372 (1944) (sponge sewn into plaintiff's abdomen).

The tolling of the three-year statute of limitations applicable to this case, therefore, is to be determined under the principles announced by the Supreme Court in *Holmberg v. Armbrecht, supra*.

## II.

Federal equitable tolling provides that when a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered ...." *Bailey v. Glover*, 21 Wall. (88 U.S.) 342, 22 L.Ed. 636 (1875). In *Holmberg*, the Court made clear that the *Bailey* rule applies not only to federal statutes but also to statutes borrowed from the states in federal question cases. The borrowed limitations period does not begin to run "until after [plaintiff] had discovered, or had failed in reasonable diligence to discover, the alleged deception ...." *Holmberg v. Armbrecht, supra*, 327 U.S. at 397, 66 S.Ct. at 585.

Appellant argues that diligence and the time of discovery are necessarily questions for the jury and cannot be decided by the court on a motion for summary judgment. "The question of whether a plaintiff should have discovered the basis of his suit under the doctrine of equitable tolling does not lend itself to determination as a matter of law." *Aldrich v. McCulloch Properties, Inc., supra*, 627 F.2d at 1042, citing *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168 (10th Cir. 1974), where we held that "in a case such as this" (broker's churning of plaintiff's account) it would be "seldom, if ever, possible for a judge to determine summarily when the injured person ... became fully aware that he or she had been victimized." *Id.*, at 172. *See also Robertson v. Seidman & Seidman*, 609 F.2d 583, 591 (2d Cir. 1979); *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5, 8 (5th Cir. 1967).

Another line of cases, however, supports summary disposition. In at least one § 10(b) case since *Dzenits* we have affirmed a summary judgment for defendant on the issue of discovery. *Jones v. Ford Motor Co.*, 599 F.2d 394 (10th Cir. 1979). Many cases from other circuits have affirmed summary judgment for defendant on discovery or diligence, using a variety of legal theories.[9]

In view of these conflicting precedents, we have found it helpful to consider the origins of equitable tolling. Early English statutes of limitation provided that "no person shall sue, have or maintain any writ"

---

9. *See, e. g., Gaudin v. KDI Corp.*, 576 F.2d 708, 712 (6th Cir. 1978) (as a matter of law, plaintiff should have inferred fraud from precipitous decline of stock, other lawsuits, etc.); *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977) (plaintiff could have discovered fraud from defendant's admissions in S.E.C. release and the listing of defendant as 'in peril' by stock exchange); *Goldstandt v. Baer, Stearns & Co.*, 522 F.2d 1265 (7th Cir. 1975) (plaintiff should have sought independent legal advice); *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir. 1975) (plaintiff should have discovered fraud in light of stock's precipitous decline and other lawsuits); *Hupp v. Gray*, 500 F.2d 993 (7th Cir. 1974) (plaintiff's affidavits failed to show actual diligence); *Klein v. Shields & Co.*, 470 F.2d 1344, 1346–7 (2d Cir. 1972) (at least the possibility of fraud should have been apparent from earlier lawsuit).

after a specified time. 32 Hen.VIII c.2 (1540). Since the statute did not apply to chancery, however, a party with no remedy at law because of the statutory bar could sue out a bill in equity. But to win the chancellor's favor, the suitor would have to show by clear and convincing proof that he had been diligent and faultless in pursuit of his rights.[10] Thus the U.S. Supreme Court, in announcing that the limitation provision of the federal bankruptcy statute could be tolled by a federal judge on equitable grounds, made clear that tolling could occur only where plaintiff's delay was without "fault," "want of diligence or care," "negligence" or "laches." *Bailey v. Glover, supra,* at 349–50. In equity the issue of diligence was decided by the chancellor often on written petitions as opposed to live testimony—a procedure much like our summary judgment under Fed.R.Civ.P. Rule 56.

In 1833, Parliament enacted a statute providing that actions in fraud shall be "deemed to have accrued at, and not before, the time at which such fraud shall or with reasonable diligence might have been discovered ..."[11] 3 & 4 Wm.IV c. 27 § 26. Many legislatures in the United States followed the English example during the 19th century, apparently intending to do no more than codify the equitable doctrine and make it applicable to the law courts. But a consequence of codification was that accrual became an element of a statutory defense and thus had to be proved in a jury trial. Meanwhile, the equitable rule subsisted side by side with the new statutes, and even extended in some cases to actions at law, at least in federal cases where a statutory tolling provision was lacking. "We see no reason why the principle [of equitable tolling] should not be as applicable to suits tried on the common-law side of the court's calendar as to those on the equity side." *Bailey v. Glover, supra,* at 349.

Despite the union of law and equity, the distinction has continuing significance in federal civil actions on the question of trial by jury, since the Seventh Amendment does not apply to claims within equity jurisdiction. *Parsons v. Bedford,* 3 Pet. (28 U.S.) 433, 447, 7 L.Ed. 732 (1830). *See also Pernell v. Southall Realty,* 416 U.S. 363, 374–6, 94 S.Ct. 1723, 1729–30, 40 L.Ed.2d 198 (1974); *Curtis v. Loether,* 415 U.S. 189,192–4, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974); *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). When federal courts imply a private right of action under a federal statute, they must frequently decide whether the remedy sought is of legal or equitable nature.[12]

In view of the equitable origin of the tolling doctrine, we think there remains some room for discretion by the court on the issue of plaintiff's discovery and diligence in cases under § 10(b) when the pleadings show that the action would be time-barred but for the equitable doctrine. In the cases where other circuits have affirmed summary judgment on diligence, the district judges have essentially decided the tolling issue in the manner of chancery.[13]

---

**10.** Equity's requirement that plaintiff prove *actual* diligence has survived in a few modern federal cases. *See, e. g., Arneil v. Ramsey, supra,* at 781; *Hupp v. Gray, supra; Morgan v. Koch,* 419 F.2d 993, 996 (7th Cir. 1969). *But see Goldstandt v. Baer, Stearns & Co., supra,* at 1268.

**11.** The Statute of William is perhaps the source of the modern test based upon hypothetical as opposed to actual diligence.

**12.** Cf. *In re Gartenberg,* 636 F.2d 16 (2d Cir. 1980), which held that an action under § 36(b) of the Investment Company Act of 1940, as amended, 15 U.S.C. § 80a–35(b), is equitable in nature and should be tried to the court.

**13.** As many authorities have said, the question of whether a plaintiff should have discovered the basis of his suit under the doctrine of equitable tolling does not lend itself to determination as a matter of law. *Aldrich v. McCulloch Properties, Inc., supra,* 627 F.2d at 1042; 6 L. Loss, *Securities Regulation,* 3905 (2d ed. Supp. 1969). Nevertheless, trial judges frequently conclude that dismissal *in limine* is the proper disposition of cases such as this, and such dismissal has often been upheld on appeal. Cases like those cited in footnote 9 *supra* cannot be adequately explained as individual determinations of law, each on a question of first impression unique to the particular facts of the case. We think that equitable discretion by the trial court is a better explanation.

We think that such discretion was proper in the case at bar.

## III.

Limitations rules have traditionally been cast in terms of a prohibition on the *commencement* of an action.[14] In addition to the general policy favoring repose and the quieting of titles, the statute seeks to relieve defendants of the cost and vexation of protracted litigation and the uncertainty of contingent liabilities. Not only defendants but also the courts have an interest in the timely commencement of actions. The adjudication process is hampered by stale evidence and absent witnesses; the burden on court calendars would instantly increase if actions now time-barred were revived by a new statute or tolling rule.

Any rule which makes the statute of limitations necessarily a jury question defeats the statute's purpose of preventing trials of stale claims. The need to avoid vexatious litigation is especially acute in cases under § 10(b) involving public misrepresentations in the sale of publicly traded securities, an area of the law which readily engenders multiple lawsuits arising out of the same underlying transactions. Contingent liabilities due to unfiled claims create special problems when they involve corporations with publicly traded securities. These problems are compounded by a tolling rule which effectively neutralizes the statute of limitations.

■■■ Where, as here, a § 10(b) action alleges substantially the same facts as in prior litigation, summary disposition is appropriate if the documents before the court clearly and convincingly persuade the trial judge that plaintiff in the exercise of reasonable diligence would have discovered the fraud at such a time as to bar the action.

If the documents before the court are not sufficiently persuasive to meet this stringent test, a jury ultimately deciding the facts will determine by a preponderance of the evidence whether the action accrued too remotely. We uphold the trial court's order in this case because we find that it was well supported by the record and was not an abuse of discretion.[15]

## IV.

■■■ The court below applied the diligence rule as we have stated it here. Appellant, however, claims that a different rule obtains in this case because of its offer to prove that Lowry had concealed a secret buy-back agreement and destroyed it nearly two years after the initial fraud. The *Holmberg* rule, says appellant, applies only to simple fraud; where defendant has taken steps after the initial fraud to prevent its discovery, the statute of limitations is tolled until actual discovery regardless of diligence. Although we find some support for this view, *Robertson v. Seidman & Seidman, supra,* 609 F.2d at 593; *Sperry v. Barggren,* 523 F.2d 708, 711 (7th Cir. 1975); *Tomera v. Galt,* 511 F.2d 504, 510 (7th Cir. 1975), we see no reason why an act of concealment by defendant should excuse plaintiff from his obligation of diligence, which he owes the court as well as his adversaries. Of course, if defendant *successfully* conceals the fraud, the concealment would fool the hypothetical diligent plaintiff and toll the statute. But where, as here, the concealment is insufficient to fool a reasonably diligent plaintiff but nevertheless allegedly prevented discovery by Ohio, the second doctrine of fraudulent concealment urged by appellant would simply give it a second arrow to its bow. We hold, therefore, that there is but one federal

---

14. *Compare* 32 Hen.VIII c. 2 ("No person shall sue, have or maintain any writ . . .") with Colo. Rev.Stat. § 13–80–109 ("Bills of relief on the ground of fraud shall be filed within three years . . . and not afterward").

15. We feel constrained to stress that our concern today is with frauds based on material misstatements regarding publicly traded securi-

ties. It may well be that the trial court's discretion to rule summarily on discovery or diligence should be exercised more sparingly in face-to-face, "private" frauds under § 10(b). *See Aldrich v. McCulloch Properties, Inc., supra; Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra.*

doctrine of equitable tolling, as set forth in *Holmberg v. Armbrecht, supra.*[16]

### V.

Shortly after appellant filed *Ohio v. Crofters*, that case was consolidated with many other suits involving the same or related facts. The court below had no need to enquire as to whether appellant actually obtained the pleadings and other papers from the actions consolidated with Ohio's, since a diligent plaintiff would obtain such documents and scrutinize them. Similarly, appellant as an active and major participant in the KRC bankruptcy proceeding had constructive if not actual knowledge of all papers filed by the trustee in bankruptcy and responses thereto.

■■■ Appellant argues that the complaints filed by other plaintiffs contained mere allegations of fraud by Lowry, and that Ohio cannot be charged with discovery of the fraud until such allegations and suspicions are supported by hard evidence. We disagree. Discovery under the equitable tolling doctrine merely starts the limitations period running. From that point on, appellant had three years [17] to find the minimum support necessary for filing a complaint. After filing it, Ohio would have had more time to develop the evidence and to refine the issues through pre-trial discovery.

■■■ Ohio knew no later than 1972 that the "sale" by KRC of certain Arctic land permits was fraudulent. In the exercise of reasonable diligence, Ohio could have learned that KRC's accountants, before writing up KRC's assets on the basis of this sale, had obtained a letter, signed by King and Lowry, certifying that the sale was genuine. A plaintiff's discovery that a document contains falsehoods material to a fraud against him starts the statute running as to the known authors of the document. Lowry was not only a KRC director and KRC's general counsel; he was known to be intimately involved in King's corporate and personal financial dealings at the time of the Arctic land transaction. In view of this, a diligent plaintiff would have joined appellees as defendants because of the likelihood that Lowry had "structured the deal" and prepared instruments evidencing the fake sale. The probability of Lowry's participation in the fraudulent transaction started the statute running as to him, even though Ohio had no proof of *scienter*. Although *scienter* is a necessary element of a § 10(b) private action, *Ernst & Ernst v. Hochfelder, supra*, in many cases *scienter* will emerge only as an inference from the facts before the jury. This circumstance cannot be used as a basis for emasculating the statute of limitations. Discovery for equitable tolling purposes must not, therefore, be equated with proof of each and every element of plaintiff's case.

We conclude that there is sufficient support in the record to uphold the district court's order and that there was no abuse of discretion. Accordingly, the judgment is AFFIRMED.

16. The view that there are two distinct doctrines of tolling perhaps derives from a confusion with earlier versions of the equitable rule requiring plaintiff to prove actual diligence. Such proof was excused if defendant had concealed all cause of reasonable suspicion. The exception is redundant under our test based on hypothetical diligence.

Even if we were to adopt appellant's view of the law, we note that the record would also support a finding of actual discovery by Ohio of facts implicating Lowry in the fraud. We do not reach this point because the court below based its decision on diligence, see footnote 5, *supra*, and we affirm on that basis.

17. Appellant points out that the stays of discovery imposed by the court below left it only a total of 16 months broken into two segments before the running of the statute as reckoned by the trial court. If compulsory process were Ohio's only means of gathering the facts necessary to identify appellees as appropriate defendants and to draft a complaint, our result today might be different. The record, however, shows that ample information for these purposes was available to appellant from papers filed in other lawsuits and from public sources. Had appellant's complaint been filed within the limitations period, there is no reason to doubt that the court below would have permitted reasonable discovery before trial.