Rex W. COPSY, and John R. Reynolds, Plaintiffs-Appellants,

v.

**BROTHERHOOD OF LOCOMOTIVE ENGINEERS, a National Labor Organization; John F. Systma, President of the Brotherhood of Locomotive Engineers; Division 451 of the Brotherhood of Locomotive Engineers, a Local Labor Organization; C.E. Hamm, Local Chairman of Division 451 of the Brotherhood of Locomotive Engineers; the Denver and Rio Grande Western Railroad Company, a Delaware corporation; United Transportation Union, a National Labor Organization; Al H. Chesser, President of the United Transportation Union; Local 24 of the United Transportation Union, a Local Labor Organization; Freddie W. Maxfield, Local Chairman of Local 24 of the United Transportation Union, Defendants-Appellees.**

No. 83–1596.

United States Court of Appeals, Tenth Circuit.

July 3, 1985.

Richard G. McManus, Jr. of Miles & Mc-Manus, Denver, Colo., for plaintiffs-appellants.

David B. Kiker of Morrisard & Rossi, P.C., Aurora, Colo., for defendants-appellees United Transp. Union and Local 24 of the United Transp. Union.

Harold A. Ross of Ross & Kraushaar Co., L.P.A., Cleveland, Ohio (Martin D. Buckley of Hornbein, MacDonald, Fattor & Buckley, Denver, Colo., with him on the brief), for appellees, Brotherhood of Locomotive Engineers and Division 45 of the Broth. of Locomotive Engineers.

Kathleen M. Snead, Denver, Colo., for the Denver and Rio Grande Western R. Co.

Before HOLLOWAY, Chief Judge, BREITENSTEIN, Circuit Judges and ANDERSON *, District Judge.

BREITENSTEIN, Circuit Judge.

Appellants-plaintiffs, Copsy and Reynolds, sued a railroad, labor unions, and officers of the unions, seeking reinstatement to the positions of locomotive engi-

* The Honorable Aldon J. Anderson, Chief Judge for the United States District Court for the Dis-trict of Utah, sitting by designation.

neers and damages. The United States District Court for the District of Colorado dismissed the action because of the bar of the statute of limitations. The plaintiffs appeal. We affirm.

In 1971 the Denver and Rio Grande Western Railroad Company (D & RG) experienced a shortage of qualified locomotive engineers. It attempted to promote firemen employed by it to locomotive engineers. United Transportation Union (UTU), the national representative of firemen and hostlers, objected, maintaining that firemen could not be employeed as engineers until they had completed three years of service as firemen. D & RG then hired plaintiffs-appellants, who were locomotive engineers with other railroads. After plaintiffs' employment, UTU permitted firemen with less than three years of service to be engineers. The result was that plaintiffs were unable to hold jobs as engineers and subsequently worked in train service as brakemen. On employment by D & RG, the plaintiffs had become members of the Brotherhood of Locomotive Engineers (BLE). In August, 1972, the plaintiffs both resigned their positions as locomotive engineers and firemen and accepted jobs as brakemen.

The original complaint in this action, filed December 13, 1979, named as defendants the railroad and BLE, its local union and certain union officers. The complaint alleged that BLE unfairly represented them in processing their grievance against D & RG and that D & RG intentionally violated its collective bargaining agreement with BLE by removing plaintiffs from their positions as engineers and denying them their seniority rights. The complaint further alleged that D & RG's actions were the result of a conspiracy with UTU. Defendants moved to dismiss for failure to join the UTU. The complaint was amended on May 5, 1980, to join as defendants UTU, its local union, and certain of its officers alleging intentional interference with plaintiffs' con-

tractual rights. All defendants moved to dismiss on several grounds including the bar of the statute of limitations. The motions were denied and the case went to trial before a jury. At the conclusion of plaintiffs' case, the defendants all moved for a directed verdict. The trial court sustained the motions, holding, Tr. Vol. VI, pp. 102–108, that (1) the action was barred by the Colorado six-year statute of limitations as to UTU and by the two-year federal statute of limitations as to the D & RG and BLE; (2) the doctrine of equitable estoppel did not apply; (3) the plaintiffs failed to prove the requisite elements of intentional interference with contract by UTU; and (4) there was no breach of contract by D & RG.

Plaintiffs-appellants agree that the Colorado statute of limitations applied. C.R.S. § 13–80–110. That statute bars a suit after six years. Brief of appellants, p. 14.

Copsy, who had been previously employed as an engineer by the Louisville & Nashville Railroad, applied to D & RG for a job. He began working for the D & RG on September 10, 1981, as an engineer. Tr. Vol. II, p. 13. Reynolds had been employed by the Rock Island Railroad as an engineer. In his application to the D & RG he stated that he was applying for a fireman position. See Tr. Vol. IV, pp. 147–149. He made his first run as a fireman on July 10, 1971. He claims that his first run as an engineer was in the latter part of July, 1981. The date shown on the company records for engineer seniority of Reynolds is August 20, 1971.

Sometime in the summer or fall of 1971, the personnel director of D & RG and the general chairman of UTU entered into "special understandings" or agreements pertaining to plaintiffs' seniority. Tr. Vol. II, pp. 14, 23–24, 84; Exs. 9, 20, 32. These "special understandings" permitted firemen already employed by D & RG to be placed ahead of plaintiffs on the engineer seniority list when they were promoted to engineers.

During the first half of 1972, plaintiffs were called to work in engine service and were laid off several times. Tr. Vol. II, p. 30; Tr. Vol. IV, pp. 132–133. In June, 1972, plaintiffs were "loaned out" to work in train service as brakemen. Tr. Vol. II, pp. 30–31; Tr. Vol. IV, pp. 133–134.

Plaintiffs testified that on August 1, 1972, D & RG advised them that they would have to resign their seniority as firemen to remain in train service. Tr. Vol. II, pp. 31–34; Tr. Vol. IV, pp. 63, 135. Plaintiffs prepared and signed resignations relinquishing their seniority as firemen but not mentioning their engineer seniority rights. Plaintiffs testified that they were in touch with Stoops, an official of Local 451, BLE, before signing the resignations and were told to sign them and that the BLE would straighten out their seniority rights. Tr. Vol. II, p. 33; Tr. Vol. IV, p. 134. Stoops testified that Reynolds never conferred with him regarding the resignations, Tr. Vol. IV, p. 37, 49, and that he never gave Copsy any advice regarding the resignations. Id. at 50.

D & RG did not accept the resignations because they did not give up their seniority rights as engineers. They were told that if they did not give up their engineer rights also, they could not work in train service. Reynolds signed the resignation as engineer on August 7 or 8, 1972, and Copsy signed on August 25, 1972. Copsy claims that he consulted Stoops and was told to sign under protest. Tr. Vol. II, pp. 38–39. Stoops denied making such statement. Tr. Vol. IV, p. 78. Stoops testified that Reynolds did not talk to him about the second resignation. Id. at 37, 49, 64–65, 76.

Stoops, the official of Local 451, BLE, testified that he told Copsy in January, 1974, that the BLE could not help him because he had resigned. Id. at 97–98. Stoops wrote a letter at Copsy's request to BLE International President, C.J. Coughlin, on January 5, 1974. Id. at 95; Ex. 34. In this letter Stoops indicates that he did not know what the BLE could do for Copsy since he had resigned. Id. Coughlin responded in a letter dated January 15, 1974, stating that action should have been taken at the time Copsy resigned as engineer.

Ex. 35. Coughlin wrote that it was "problematic due to the fact that he is on record as resigning" that anything could be accomplished for him. Id. Coughlin concluded that, "if action is called for at this late date, it could be only a submission of the case to the First Division of the NRAB or to a Public Law Board." Id. Stoops showed Coughlin's letter to Copsy. Tr. Vol. IV, pp. 95–96. Copsy did nothing. Instead he and Reynolds brought this suit on December 13, 1979, more than six years after he and Reynolds resigned in August, 1972, by which time he and Reynolds admitted knowing of the "special understanding" between the railroad and the UTU. Tr. Vol. II, p. 84; Tr. Vol. V, p. 33.

We agree with the trial court that the action accrued in August, 1972, when they both resigned the positions of fireman and engineer. See *City of Aurora, Colorado v. Bechtel Corp.* (10 Cir.1979), 599 F.2d 382, 386–387. At the time of trial both Copsy and Reynolds were working in train service; Copsy as a conductor and Reynolds as a brakeman. Further, we find that the trial court did not abuse its discretion in holding that the plaintiffs' claims were not tolled by the alleged representations of the BLE. *State of Ohio v. Peterson, Lowry, Rall, etc.* (10 Cir.1981), 651 F.2d 687, 693. As we find that plaintiffs' claims were barred by the six-year period of the Colorado statute of limitations, we need not address the other points raised on this appeal, including whether the shorter two-year federal statute of limitations might have applied to D & RG and BLE.

Affirmed.