INDUSTRIAL CONSTRUCTORS CORPO-RATION; Paul Powers, individually, and as shareholder and officer of Industrial Constructors Corporation; Wayne Elledge, individually, and as shareholder and officer of Industrial Constructors Corporation; Janet Hall, individually, and as shareholder and officer of Industrial Constructors Corporation; James Schuemacher, individually, and as shareholder and officer of Industrial Constructors Corporation; Betty Powers, individually, and as shareholder and officer of Industrial Constructors Corporation, Plaintiffs–Appellants,

v.

The UNITED STATES BUREAU OF REC-LAMATION, an agency of the United States of America; Lindell H. Elfrink, individually; Bill Frazer, individually; Michael T. Voth, individually, Defendants–Appellees.

No. 92–2200.

United States Court of Appeals, Tenth Circuit.

Feb. 2, 1994.

S. Austin Johnson, Albuquerque, New Mexico, for Plaintiffs–Appellants.

John W. Zavitz, Assistant United States Attorney (Don J. Svet, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Defendants–Appellees.

Before BALDOCK, McWILLIAMS and BRORBY, Circuit Judges.

BALDOCK, Circuit Judge.

Plaintiffs Industrial Constructors Corporation ("ICC") and its shareholders and officers appeal the district court's dismissal pursuant to Fed.R.Civ.P. 12(b)(6) of their claims as time-barred. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Plaintiffs alleged the following facts in their complaint and in the documents at-

tached to their complaint, and we presume these facts are true in reviewing a motion to dismiss. *See Settles v. Golden Rule Ins. Co.,* 927 F.2d 505, 507 (10th Cir.1991) (complaint allegations are presumed true in reviewing the granting of a motion to dismiss); *see also Hall v. Bellmon,* 935 F.2d 1106, 1112 (10th Cir.1991) (written documents attached to the complaint are exhibits and are considered part of the complaint for consideration in a rule 12(b)(6) dismissal). In August 1983 in the state of New Mexico, ICC entered into a $2.3 million contract with the Bureau of Reclamation ("BOR") to install 22.4 miles of underground pipeline and recompact soil in the San Luis Valley Project near Alamosa, Colorado. Defendant Michael T. Voth was the BOR contracting officer and Defendant Lindell H. Elfrink was the BOR project engineer on the contract. Defendant Bill Frazer was the construction division manager in the engineering and research center in Denver for the BOR.

Early in the project, ICC became aware that performance according to contract specifications would be very difficult because the type of pipeline construction dictated by the contract could not be performed on the type of soil located at the contract site. On October 7, 1983, ICC met with a representative from the BOR engineering and research center to discuss the problems with the construction method. On October 10, 1983, ICC requested by letter that the BOR allow ICC to use another construction method more compatible with the job site. The BOR informed ICC that if it could meet the contract's requirements using another method, the new method would receive consideration. On October 13, 1983, ICC experimented with another construction method at the job site and submitted the results to the BOR for consideration. Upon testing the method, the BOR discovered that the new method met essentially all contract requirements. On October 28, 1983, the BOR engineering and research center sent a memorandum to Defendants Voth and Elfrink, making it plain that the method specified in the contract was not to be treated as mandatory as long as the performance objectives of the contract could be reached. Defendant Elfrink, with the knowledge of Defendant Voth, deliberately withheld the results of the BOR tests and the information contained in the October 28, 1983 memorandum from ICC, and on December 8, 1983, Defendant Elfrink, on behalf of the BOR, officially refused ICC's request to use the new method of construction, stating that the portions of the contract designating the construction method were mandatory.

In January 1984, ICC submitted an informal written claim to the BOR alleging substantial damages resulting from their inability to reach performance objectives using the construction method required by the contract specifications. At a series of meetings held in February, March, and April of 1984, ICC and its representatives sought to persuade the BOR to grant a change order which would relieve ICC of compliance with the construction method requirement. The existence of the October 28, 1983 memorandum from the BOR engineering and research center, which stated that the construction method specified in the contract was not mandatory, was not revealed to ICC at any of these meetings. In fact, Defendant Voth represented to ICC that he needed to obtain information from the engineering and research center before he could change the mandatory nature of the construction method. At the March 1984 meeting, Defendant Voth indicated to ICC that relief from the construction method requirement would not be granted unless ICC agreed to give up any claims it might have against the BOR. On April 17, 1984, Defendant Voth sent this proposal to ICC in writing, and on April 30, 1984, ICC wrote Defendant Voth, emphasizing ICC's unwillingness to give up its claims, but agreeing that if granted relief from the construction method requirements, such relief would not be construed by ICC as an admission by the BOR that its construction method was defective. On May 16, 1984, Defendant Voth responded to ICC, stating that no relief from the construction method requirements would be granted absent a formal release of all claims and threatening to terminate ICC for default and failure to adhere to the contested contract requirements.

In May and June of 1984, ICC continued its attempt to find a way to use the construction method specified in the contract, even

consulting and cooperating with an inspector recommended by the BOR who had experience with the contract-specified construction technique. Despite these attempts, the construction method continued to produce inconsistent results, and ICC's progress toward contract completion was exceedingly slow, causing ICC to continue to suffer severe cash flow problems.

In July 1984, the BOR issued an invitation for bids on another phase of the project, listing a different and more readily performable construction method. Thus, at the same time the BOR was imposing an impractical construction method on ICC, it was eliminating the requirement for other contractors on the same project.

In early August 1984, due to its financial circumstances, ICC was forced to abandon the contract. At that time, ICC notified the BOR of its intent to abandon and its claim that the BOR had materially breached its contract with ICC. Thereafter, the BOR terminated ICC's contract on the grounds of default.

As a result of the BOR's default determination, Fireman's Fund Insurance Company ("Fireman's Fund"), who was ICC's surety on the BOR project, entered into a takeover agreement with the BOR, whereby Fireman's Fund agreed to take over responsibility for completing ICC's contract. The takeover agreement specified that should litigation or settlement determine that the BOR's termination for default was improper, the BOR must reimburse Fireman's Fund for any actual costs and expenses in excess of the payments received under the takeover agreement.

When Fireman's Fund requested that the BOR allow contract completion without adherence to the contract's construction method requirement, Defendant Elfrink rejected the request. However, when the president of the completion contractor, who was hired by Fireman's Fund to complete ICC's contract, made the same request, the BOR formally approved a change in construction method. This approval was made by letters dated November 28, 1984 and February 26, 1985.

On November 20, 1984, ICC submitted its certified claim to the BOR, alleging that the default termination was improper, the contract specifications were defective and impracticable, differing site conditions existed, the BOR had breached the contract, and ICC was entitled to recover for the breach. On March 18, 1985, Defendant Voth denied ICC's claim, except to the extent that he found that the contract documents gave misleading indications that adequate select material would be available at the project site, and awarded ICC $32,104.80 for its expenditures on purchasing and hauling the select materials. ICC appealed Defendant Voth's decision to the United States Claims Court.

By letter dated November 5, 1985, Fireman's Fund submitted a certified claim to Defendant Voth, seeking to recover costs in excess of $2 million, alleging that the BOR's default termination of ICC was improper and that pursuant to its rights under the takeover agreement, Fireman's Fund was entitled to its costs to complete the project. Defendant Voth denied this claim on January 31, 1986, and Fireman's Fund appealed to the United States Claims Court. This appeal was consolidated with ICC's Claims Court appeal.

In June of 1988, during the Claims Court discovery process, ICC learned that agents of the BOR had concealed the October 28, 1983 memorandum which gave ICC permission to change from the contract's construction method to a more practicable method. Later in the discovery process, on November 12, 1989, ICC found out that the results of the October 13, 1983 test of their alternative method had been favorable.

At the conclusion of the Claims Court proceeding, the court found that the soil's impermeability at the site was the essential cause of ICC's inability to utilize the contract's construction method and that the contract's construction method was commercially impracticable and unreasonable. The court further found that the BOR's site specifications were defective and that ICC could have performed the contract successfully and on time if not for the differing site conditions and defective specifications. Moreover, the court found that the actions of the BOR in

failing to disclose the information in the October 28, 1983 memorandum, in insisting upon the contract construction method, in failing to reveal the results of the October 13, 1983 tests, and in conditioning any relief from the specifications upon a release of claims, constituted a material breach of the government's implied covenant of good faith and fair dealing which forced ICC into bankruptcy. Thus, the court awarded ICC all damages allowed under common law for breach of contract and awarded Fireman's Fund all actual costs and expenses in excess of the payments it had already received.

On November 15, 1991, Plaintiffs filed this suit in federal district court, requesting relief under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, for prima facie tort, intentional infliction of emotional distress, and negligent design and engineering. Plaintiffs also asserted in their complaint that Defendants had violated their constitutional right of free speech by attempting to force them to abandon their valid administrative claim, that Defendants had violated their constitutionally protected right to engage in the occupation of their choice free from unreasonable government interference, and that Defendants had deprived them of their property interest in the equipment that was repossessed and of the value of an ongoing, profit-making business. Plaintiffs failed to file an administrative claim Form 95, which is a prerequisite to bringing a FTCA cause of action, prior to filing suit in federal district court. However, they filed a Form 95 claim on March 23, 1992. On July 28, 1992, the district court granted Defendants' motion to dismiss, finding all of Plaintiffs' claims time-barred.

■ We review de novo the granting of a motion to dismiss for failure to state a

claim for which relief can be granted. *Settles*, 927 F.2d at 507. We also review de novo a district court's ruling regarding the applicability of a statute of limitations. *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1290 (10th Cir.1991).

■ Under the FTCA, filing an administrative claim with the appropriate federal agency is a prerequisite to bringing a civil action against the United States for damages for the negligence or wrongful act of any United States employee. 28 U.S.C. § 2675(a);[1] *Three–M Enterprises, Inc. v. United States*, 548 F.2d 293, 294 (10th Cir. 1977). A tort claim against the United States is barred unless it is presented to the proper agency within two years of its accrual and suit is commenced within six months of notice of the claim's denial by the agency. 28 U.S.C. § 2401(b);[2] *Casias v. United States*, 532 F.2d 1339, 1341 (10th Cir.1976). A claim is deemed presented when a federal agency receives from a claimant "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a). "[B]ringing an administrative claim is a jurisdictional prerequisite to suit, imposed by Congress, which the courts have no power to waive." *Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1463 (10th Cir.1989); *see also Bradley v. United States*, 951 F.2d 268, 270 (10th Cir.1991). A plaintiff's claim that administrative remedies were not pursued because pursuit would have been futile does not excuse this jurisdictional requirement. *Nero*, 892 F.2d at 1463.

1. 28 U.S.C. § 2675(a) provides:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

2. 28 U.S.C. § 2401(b) provides:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

■ We conclude that Plaintiffs' failure to file an administrative claim prior to filing this cause of action bars this suit, and Plaintiffs' assertion that filing would have been futile does not excuse that failure nor does it change the jurisdictional bar. Prior to bringing suit, Plaintiffs only filed one claim with the BOR. This claim, submitted on November 20, 1984, was inadequate to fulfill the FTCA notice requirements because it listed only contract claims, thus failing to meet the notice requirements of 28 C.F.R. § 14.2(a). Furthermore, even if the notice requirements had been satisfied by the November 20, 1984 claim, ICC did not commence this FTCA suit within six months of the BOR's March 1985 claim denial; thus, it also failed to meet the requirements of 28 U.S.C. § 2401(b). Although Plaintiffs attempted to correct their failure to file a Form 95 with the BOR by filing one on March 23, 1992, the Supreme Court has held that administrative claims presented after a plaintiff has filed suit in district court do not meet the FTCA exhaustion requirements. See McNeil v. United States, — U.S. —, —, 113 S.Ct. 1980, 1983, 124 L.Ed.2d 21 (1993).

■ Plaintiffs also assert an action for damages pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), arguing that Defendants violated Plaintiffs' following constitutional rights: (1) their right to free speech which Defendants allegedly violated by attempting to force Plaintiffs to abandon their valid administrative claims, (2) their right to engage in the occupation of their choice free from unreasonable government interference, and (3) their property interest in the equipment that was repossessed and the value of an ongoing, profit-making business. Because a

Bivens action for constitutional violations committed by federal agents is a judicially-created remedy, it does not carry its own statute of limitations. Where Congress has not enacted an express statute of limitations for a particular cause of action, federal courts generally borrow and apply the most closely analogous state statute of limitations, unless to do so would be inconsistent with federal law. See Owens v. Okure, 488 U.S. 235, 239, 109 S.Ct. 573, 576, 102 L.Ed.2d 594 (1989). All parties agree[3] that a Bivens action, like an action brought pursuant to 42 U.S.C. § 1983, is subject to the statute of limitations of the general personal injury statute in the state where the action arose. See Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (§ 1983 actions are subject to statute of limitation provided for general personal injury actions in state where action arose); Van Strum v. Lawn, 940 F.2d 406, 410 (9th Cir.1991) (because policies underlying Bivens actions are essentially the same as those underlying § 1983 action, courts should apply same statute of limitations in Bivens actions as they apply in § 1983 actions); Bieneman v. City of Chicago, 864 F.2d 463, 469–70 (7th Cir.1988) (same), cert. denied, 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989); Chin v. Bowen, 833 F.2d 21, 24 (2d Cir.1987) (same); McSurely v. Hutchison, 823 F.2d 1002, 1005 (6th Cir.1987) (same), cert. denied, 485 U.S. 934, 108 S.Ct. 1107, 99 L.Ed.2d 269 (1988). Because Plaintiffs and Defendants assume that the cause of action arose in New Mexico, we apply New Mexico's three-year statute of limitation.[4] See N.M.Stat.Ann. § 37–1–8.

■ Federal law, not state law, controls the issue of when a federal cause of action accrues. Baker v. Board of Regents of

3. In their brief, Plaintiffs appeared to have asserted a four-year statute of limitation for constructive fraud under New Mexico law. However, at oral argument, Plaintiffs' counsel stated that the constructive fraud reference had been merely for purposes of analogy and conceded that their cause of action was a Bivens action carrying a three-year statute of limitations under New Mexico's general personal injury statute.

4. From the facts alleged in the complaint, it appears possible that Plaintiffs' alleged Bivens causes of action arose in Colorado where Plain-

tiffs were performing the contract. However, because the applicable statute of limitations in Colorado would be two years, see Colo.Rev.Stat. § 13–80–102, and because in reviewing the district court's motion to dismiss we must merely determine whether Plaintiffs can prove any set of facts which warrant relief, see Lehman v. City of Louisville, 967 F.2d 1474, 1476 (10th Cir.1992), we give Plaintiffs the benefit of the doubt and apply New Mexico's three-year statute of limitations, which is the longer of the two possible limitations periods.

the State of Kansas, 991 F.2d 628, 632 (10th Cir.1993); Newcomb v. Ingle, 827 F.2d 675, 678 (10th Cir.1987). The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action. United States v. Kubrick, 444 U.S. 111, 121, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979); Baker, 991 F.2d at 632; Bradley, 951 F.2d at 270; Ohio v. Peterson, Lowry, Rall, Barber & Ross, 651 F.2d 687, 692 (10th Cir.), cert. denied, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981). A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. Peterson, 651 F.2d at 692. Fraudulent concealment by Defendants will in some instances toll the statute of limitations; however, to prove that the statute of limitations was tolled by a defendant's fraudulent concealment, a plaintiff must show that his ignorance of his cause of action was not the result of his lack of diligence, but was due to affirmative acts or active deception by the Defendant to conceal the facts giving rise to the claim. Baker, 991 F.2d at 633 n. 4. A plaintiff need not know the full extent of his injuries before the statute of limitations begins to run. See Gustavson v. United States, 655 F.2d 1034, 1036 (10th Cir.1981); Robbins v. United States, 624 F.2d 971, 973 (10th Cir.1980).[5]

▮ As to Plaintiffs' allegation that Defendants violated their free speech rights, Plaintiffs were aware of the facts giving rise to that cause of action on May 16, 1984, when Defendant Voth informed Plaintiffs that no relief from the construction method requirements would be granted absent a formal release of claim, and Defendants did not fraudulently conceal any facts relating to this cause of action. Thus, Plaintiffs knew or should have known of their alleged First Amendment cause of action in May of 1984,

rendering their November 15, 1992 suit outside the three-year statute of limitations period and therefore untimely.

▮ As to Plaintiffs' claims that Defendants violated their right to engage in the occupation of their choice and their property rights in their on-going business, Plaintiffs were aware of the facts giving rise to those causes of action in August 1984 when the BOR terminated the contract for default. At the time of termination in August 1984, Plaintiffs were already aware that the BOR had significantly modified their contract specifications for other project contractors while refusing to modify the specifications for ICC. Plaintiffs were also aware at the time of abandonment that their company was in a financially precarious situation, and the fact that they might not have been aware of the full extent of their financial injury did not keep the statute of limitations from running. Furthermore, Defendants' concealment of the October 13, 1983 test results and the October 28, 1983 memorandum did not cause Plaintiffs to be unaware of these two alleged Bivens claims. Accordingly, Plaintiffs' claims for interference with their occupation and interference with their property interests accrued in August 1984 at the latest, making these claims, which were filed in November 1992, untimely.[6]

▮ Plaintiffs cite Gross v. United States, 676 F.2d 295 (8th Cir.1982), and Robinson v. Maruffi, 895 F.2d 649 (10th Cir.1990), alleging that Defendants committed a continuous scheme of constitutional violations which kept the statute of limitations from running until the last constitutional violation occurred—i.e., the discovery of the concealed test results on November 12, 1989. We reject this argument because the latest constitutional violation alleged by Plaintiffs occurred in 1984. Thus, although Defendants may have committed a string of constitutional viola-

---

5. Plaintiffs cite Exnicious v. United States, 563 F.2d 418 (10th Cir.1977), in asserting that a plaintiff must know the extent of his injury before the statute of limitations begins to run. However, we have interpreted Exnicious as holding directly contrary to Plaintiffs' assertion. See Robbins, 624 F.2d at 973 (citing Exnicious as holding that a cognizable injury or damage begins the running of the statutory period even

though the ultimate damage is unknown or unpredictable).

6. Because we dismiss Plaintiff's Bivens claims as untimely, we do not reach the issue of whether the facts of this case give rise to the three constitutional claims asserted by Plaintiffs nor do we address whether Plaintiffs claims are recognizable Bivens claims.

tions, the string of violations ended in 1984. While Defendants continued to behave wrongfully toward Plaintiffs through 1989 by concealing certain facts, this concealment was not a constitutional violation and therefore did not toll the statute of limitations.

Accordingly, we agree with the district court that all of Plaintiffs' claims are time-barred,[7] and we AFFIRM.

---

**7.** We emphasize, however, that by dismissing Plaintiffs' claims as time-barred, we are in no way condoning the egregious acts Defendants inflicted upon ICC. We find the behavior of some of the Defendants completely unacceptable of government representatives.