*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0004P (6th Cir.)
File Name: 00a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MARK S. MOUNTS,
    *Plaintiff-Appellant,*

    *v.*

GRAND TRUNK WESTERN
RAILROAD,
    *Defendant-Appellee.*



No. 99-3151

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-00036—Joseph P. Kinneary, District Judge.

Argued: December 6, 1999

Decided and Filed: January 5, 2000

Before: COLE and GILMAN, Circuit Judges; CARR,
District Judge.*

---

    *The Honorable James G. Carr, United States District Judge for the
Northern District of Ohio, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:** Paul Kevin Hemmer, CARROLL, UCKER & HEMMER, Columbus, Ohio, for Appellant.   Julie L. Atchison, PORTER, WRIGHT, MORRIS & ARTHUR, Columbus, Ohio, for Appellee. **ON BRIEF:** Paul Kevin Hemmer, CARROLL, UCKER & HEMMER, Columbus, Ohio, for Appellant. Julie L. Atchison, Patrick Jerome Smith, PORTER, WRIGHT, MORRIS & ARTHUR, Columbus, Ohio, for Appellee.

———————————

**OPINION**

———————————

R. GUY COLE, JR., Circuit Judge.  The sole issue on appeal is whether Mark S. Mounts, a lifetime railroad employee who can no longer hold his job because of hearing loss, filed suit against his former employer within the three-year statute of limitations of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq.  We find that he did not, and therefore AFFIRM the district court's grant of summary judgment for the defendant employer, Grand Trunk Western Railroad.

**I.**

Mounts is a 51-year-old man who has been a railroad employee all his career.  After working as a brakeman for the New York Central Railroad for ten years, Mounts began working for Grand Trunk Western ("GTW") in March 1978. During his employment with GTW, which was primarily based in Ohio, he was exposed to a variety of loud noises in connection with his work, such as noises from brake exhaust, radios, yard retarders, and whistles.  Mounts attributes his subsequent hearing loss to these noises on his job sites.

occur within the statutory period); *Flynt v. Brownfield, Bowen, & Bally*, 882 F.2d 1048, 1052 (6th Cir. 1989) (discussing Ohio cases that apply doctrine to suits against attorneys), there has been no indication that it applies to FELA claims.  In fact, in *Kichline*, which Mounts urges us to follow, the Third Circuit rejected the continuing tort theory. *See Kichline*, 800 F.2d 356, 360 (3d Cir. 1986) (limiting *Fowkes v. Pennsylvania R.R.*, 264 F.2d 397 (3d Cir. 1959), which arguably applied the doctrine); *see also National Railroad Passenger Corp. v. Krouse*, 627 A.2d 489 (D.C. App. 1993) (reversing lower court's finding that the FELA cause of action did not accrue until the employer's tortious action ended and citing, at 495 n.9, federal district court cases rejecting this approach).  We decline to apply the continuing tort doctrine to this case, because Mounts clearly knew of his injury and its cause long before filing suit and failed to produce evidence of a new or separate injury caused by the alleged continuing conduct of GTW.

**CONCLUSION**

In sum, the FELA statute of limitations has run and no genuine issue of material fact exists as to whether Mounts's cause of action accrued before this period.  Therefore, we AFFIRM the district court's grant of summary judgment for defendant GTW.

Mounts's attempts to distinguish *Aparacio* in order to obtain relief for the worsening of his condition that occurred within the three years prior to filing suit are unavailing. Although factual differences exist between this case and *Aparicio*, the application of the discovery rule does not hinge on the distinction of whether or not the employee withheld information of his injury from the employer, nor does it rely on the employer's knowledge or lack of knowledge of the injury. *Cf. Kubrick*, 444 U.S. at 122-23 (stating that the goal of the discovery rule is to encourage an employee to inform himself about his condition and bring claims promptly). We also note that a holding that circumvents the discovery rule when the employer knows of the employee's condition might create unfortunate incentives for employers not to "find out" about employee illnesses through regular testing.

Nor does Mounts have a viable claim for a continuing tort under FELA. The continuing tort doctrine can be viewed as an exception to the discovery rule, *see Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991) (calling continuous violations an exception in the discrimination context), or an alternative to the discovery rule. Although continuing tort has been recognized by our circuit in  other contexts, *see Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 408 (6th Cir. 1999) (stating that, in the Title VII context, longstanding and demonstrable discrimination can allow a court to examine discriminatory acts that occur even outside of the statute of limitations, as long as some of these acts

---

governing malpractice claim under Federal Tort Claims Act begins to run when claimant discovers or should have discovered the acts constituting the alleged wrong), *cert. denied*, 454 U.S. 967 (1981); *Herm v. Stafford*, 663 F.2d 669, 682 (6th Cir. 1981) (statute in securities fraud case begins to run when the fraud should have been discovered); *Ott v. Midland-Ross Corp.*, 600 F.2d 24, 27 (6th Cir. 1979) (Age Discrimination in Employment Act claim accrues within a reasonable time after plaintiff should have discovered injury); *N.L.R.B. v. Allied Products Corp.*, 548 F.2d 644, 650 (6th Cir. 1977) ("general rule" is that statute begins to run when claimant discovers or should have discovered the unfair labor practice).

GTW began to conduct regular hearing tests of its employees in the late 1980s. In 1989, Mounts was administered a hearing test, after which he was told that he had a hearing loss. At a follow-up test in April 1990, the doctor's notes state that Mounts said he was having difficulty hearing communications at work and that his hearing had decreased over a period of time. Mounts was directed to undergo more extensive testing in Detroit, and testing by a different doctor in Ohio. The second Ohio doctor, Morris, discussed the results of the test with Mounts and discussed the possibility of a hearing aid. (GTW later refused to pay for a hearing aid after Mounts ordered one; a railroad official stated that he did not need one.) Mounts was out of work for five and a half weeks because of this hearing testing.

In July 1990, Mounts settled a hearing loss claim with GTW for $7,700 and signed a waiver of claims against the railroad. Mounts states that he was told by GTW's claim agent, Blackstone, that in order to receive his wages for the time off, he had to sign the waiver. The amount of money he received was marginally more than his back pay. Mounts also states that Blackstone told him that his hearing loss was minimal. Mounts did not take a physical or hearing test before returning to work.

In 1993, after a company audiogram showed hearing loss, Mounts was again directed to Detroit for a hearing test. The test, conducted in November 1993, showed a moderate loss for speech and severe loss for high pitched sounds in both ears. The doctor's report states that Mounts told him the conditions at work were noisy.

From about 1990, when GTW supervisors told him to wear ear plugs, until the time he ceased employment with GTW, Mounts wore hearing protection when he could. He said that sometimes the protection would prohibit him from hearing well enough to do his job, so he would remove it. Otherwise, though, he wore the protection that GTW gave him. Mounts was not told by GTW at any point that he had job restrictions.

In May 1994, Mounts went on medical leave as a result of a seizure (unrelated to his hearing claim). He returned to his position in April 1995, with a medical clearance and without any work restrictions.

GTW conducted another test of Mounts's hearing in 1996, which showed poorer hearing. On May 28, 1997, Mounts was removed from service with GTW because of his hearing impairment. He was referred by his personal physician to a specialist, who opined that Mounts is permanently disabled from his railroad work. GTW told Mounts to apply for a permanent disability annuity from the Railroad Retirement Board.

On January 8, 1998, Mounts sued GTW in district court under the FELA, 45 U.S.C. § 51, for: 1) negligence; and 2) maintaining improper and unsafe equipment in violation of the Boiler Inspection Act, 45 U.S.C. § 22 et seq. (1994). In count three of his amended complaint, Mounts alleged fraud in the signing of the 1990 waiver, or in the alternative, mutual mistake.

GTW filed for summary judgment based on the three-year FELA statute of limitations. *See* 45 U.S.C. § 56. The district court dismissed all three counts; granting summary judgment based on the statute of limitations on the first two counts, and dismissing the third count for failure to state a claim because it was dependent on the success of the underlying FELA claims. Mounts appeals.

## II.

We review the grant of a motion for summary judgment under a *de novo* standard. *See Babbitt v. Norfolk & W. Ry. Co.*, 104 F.3d 89, 90 (6th Cir. 1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding the motion, a court must view the evidence and draw

a severable cause of action under Federal Employers' Liability Act." *Aparicio*, 84 F.3d at 815. Instead, we adopted the rationale set out in *Fries v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092 (7th Cir. 1990), as the rule of this circuit. *See Aparicio*, 84 F.3d at 815. In *Fries*, a railroad worker with hearing loss acknowledged that he noticed the loss as early as 1980 or 1981, and soon after suspected it was caused by his job, but did not seek treatment until 1985. The Seventh Circuit rejected Fries's suit, filed in November 1987. *See Fries*, 909 F.2d 1092. *Fries* explicitly stated that a cause of action could accrue before the injury reached its maximum severity. *See id.* at 1096. In other words, in this circuit, an employee who discovers an injury and its cause before the three-year statute of limitations period is precluded from later bringing suit against his employer based on that injury. *See id.*; *see also Albert v. Maine Cent. R.R. Co.*, 905 F.2d 541 (1st Cir. 1990) (finding the five plaintiffs' claims barred by the statute of limitations when they knew of their hearing loss and attributed it to their railroad work more than three years before filing suit).[3]

---

[3]In addition, the discovery rule has also been applied to a range of other federal statutes. See *Michigan United Food & Commercial Workers Unions v. Muir Co.*, 992 F.2d 594, 597-98 (6th Cir. 1993), which stated:

There is good reason for us now to adopt and apply the discovery rule in this ERISA case because we have frequently done so in other contexts. *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991) (42 U.S.C. § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury"); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (plaintiff in Bivens action has reason to know of his injury when he should have discovered it); *Hofstetter v. Fletcher*, 905 F.2d 897, 904 (6th Cir. 1988) (RICO action accrues when plaintiff knew or should have known of defendant's fraudulent scheme); *Au Rustproofing Center, Inc. v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir. 1985) (state fraud action accrues when the fraud was or should have been discovered); *Shapiro v. Cook United, Inc.*, 762 F.2d 49, 51 (6th Cir. 1985) (per curiam) (statute begins to run when claimant discovers or should have discovered violations of National Labor Relations Act); *Modin v. New York Cent. Co.*, 650 F.2d 829, 834 (6th Cir.) (statute of limitations

a separate injury, not a continuation of the prior injury. *See id.* at 815. We asserted that if the injury had been a continuation, it would be barred by the statute of limitations. *See id.*

Mounts has not brought forth evidence that a separate injury or disease occurred within the three-year statute of limitations. Mounts argues that a question of fact exists as to whether the change in his situation -- from being able to do his job when he returned to work in 1995 to being disabled from his job in 1997 -- constitutes a separable tort. However, he has not submitted affidavits or other evidence from medical professionals indicating that the hearing loss suffered over the past few years is a separate injury. In response to GTW's motion for summary judgment, he submitted an affidavit from Dr. Victor VerMeulen, which briefly describes Mounts's hearing loss and opines that the loss is caused by his employment at GTW and that Mounts is "permanently medically disqualified from returning to his position on the railroad."

We decline to follow Mounts's suggestion that this court can and should adopt the rationale and holding of *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356 (3d Cir. 1986). In *Kichline*, the Third Circuit permitted the employee to proceed on his claim for aggravation of an injury during the three years prior to filing suit. *See id.* at 356. "The fact that plaintiff was aware of the harmful effects of his exposure to pollutants would go to his contributory negligence under the circumstances but might not bar his claim for aggravation during that period." *Id.* at 361. The Third Circuit placed the responsibility for establishing the extent of the injury that occurred during this period on the plaintiff. *See id.*[2]

In *Aparicio*, however, this court explicitly "disagree[d] with the Third Circuit that the aggravation of an original injury is

---

[2]The court, however, rejected Kichline's argument that the cause of action did not accrue until his retirement when the harmful exposure to diesel fuel, which allegedly caused his pulmonary disease, ceased. *See id.*

all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). If the moving party shows this absence, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita*, 475 U.S. at 587. To meet this burden, the nonmoving party may not rest on the mere allegations in the pleadings. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

### III.

FELA is "a remedial and humanitarian statute . . . enacted by Congress to afford relief to employees from injury incurred in the railway industry." *Edsall v. Penn Cent. Transp. Co.*, 479 F.2d 33, 35 (6th Cir. 1973); *see also* 45 U.S.C. § 51 (establishing employer liability); 45 U.S.C. § 54 (abolishing the assumption of risk defense as a matter of law). The FELA statute of limitations, 45 U.S.C. § 56, provides in part: "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued."

The Supreme Court, in the course of determining whether a plaintiff's claim for silicosis was barred by the statute of limitations, examined what "accrual" means in the FELA statute of limitations. *See Urie v. Thompson*, 337 U.S. 163 (1949). The Court rejected the approach that "each intake of dusty breath" is a new cause of action, as well as the other extreme, a rule that the employee should have filed as soon as he contracted the disease, before he even had any symptoms; stating that a rule which held an employee responsible for knowledge of the disease "at some past moment in time, unknown and inherently unknowable even in retrospect" would frustrate Congress's purpose in enacting FELA. *Id.* at 169. Instead, "'the afflicted employee can be held to be "injured" only when the accumulated effects of the

deleterious substance manifest themselves.'"  *Id.* at 170 (quoting *Associated Indem. Corp. v. Industrial Accident Comm'n*, 12 P.2d 1075, 1076 (Cal. App. 1932)).  The Court later solidified what has become known as the discovery rule, finding that a cause of action "accrues" when an employee knows of the injury and its cause.  *See United States v. Kubrick*, 444 U.S. 111, 123-24 (1979) (distinguishing, in a Federal Tort Claims Act case, discovery of the fact of the injury from discovery of legal liability).[1]

Mounts argues against a statute of limitations bar under two approaches.  First, Mounts asserts that the claim is not time-barred because the aggravation of his hearing loss constitutes a separate injury and that the exposure at his GTW job constitutes a separate tort for FELA purposes; or at least that a question of facts exists on this point.  As proof, Mounts asserts that he returned to work in 1995 fully qualified and that, after exposure to noise at work, he was terminated in 1997 because of his hearing loss.  Second, Mounts argues that his claim is not time-barred for the injury that occurred during the three years prior to filing suit, irrespective of whether that injury is considered a new injury, aggravation of an old injury, or the result of a separate tort.  In other words, no matter what the court calls his worsened hearing, Mounts asserts that he should be able to recover for damage to his hearing that occurred within the three-year statute of limitations period.

---

[1] In *Kubrick*, the Court stated:

We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain.  The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury.  He is no longer at the mercy of the latter.  There are others who can tell him if he has been wronged, and he need only ask.

*Id.* at 122.

Both of these approaches fail under this circuit's precedent, which requires Mounts to establish a separate injury, thereby satisfying the three-year statute of limitations, before the court may conduct an examination of liability.  This circuit has interpreted the discovery rule to bar FELA claims from being brought more than three years after the initial injury and its cause were discovered.  *See Aparicio v. Norfolk W. Ry. Co.*, 84 F.3d 803, 814-15 (6th Cir. 1996).  At the latest, Mounts knew of his hearing loss and its cause in 1993, when his hearing was tested and determined to be deficient; a loss Mounts himself attributed to his employment.

The discovery rule applies even if the injury was later worsened by the same employer:

Any "aggravation" of the original negligently caused injury would only affect the plaintiff's damages, and would not require a separate determination of liability or causation.  Furthermore, a rule permitting severability of a claim that an original, continuing injury has been aggravated would contravene the purpose of the discovery rule articulated in *Urie* requiring Federal Employers' Liability Act plaintiffs to use reasonable diligence to discover the cause of an injury once the injury manifests itself.

*Id.* at 815.

In *Aparicio*, the employee alleged that the railroad negligently caused his carpal tunnel syndrome and epicondylitis.  Beginning in 1987, Aparicio began to have numbness and tingling in his right hand. These problems, however, resolved themselves with minimal treatment for approximately five years.  *See id.* at 805-06.  In 1992, Aparicio again sought treatment for pain in his hands and wrists, was diagnosed with carpal tunnel syndrome, and was operated on.  *Id.* at 806.  In 1993, Aparicio was diagnosed with tennis elbow and could not return to his job. We upheld the district court's finding that a material issue of fact was created by Aparicio's submission of an affidavit of a physician who stated that his later (1992 and 1993) injury was