HUGHES v LAKE SUPERIOR & ISHPEMING RAILROAD COMPANY

Docket No. 246260. Submitted May 19, 2004, at Marquette. Decided August 24, 2004, at 9:15 A.M. Leave to appeal sought.

Craig Hughes brought an action under the Federal Employer's Liability Act, 45 USC 51 *et seq.*, in the Marquette Circuit Court against Lake Superior & Ishpeming Railroad Company (LS&I), his employer, seeking damages arising from continuing, work-related injuries incurred in 1984 and later, after a settlement for specific injuries received before that date. LS&I moved for summary disposition, arguing that the action was barred by the statute of limitations, but the court, John R. Weber, J., denied the motion on the basis that LS&I committed a continuing tort by exposing Hughes to working conditions that continued to injure him with the result that the period of limitations began either on the day he left work or the day the company reported that there were no positions available to accommodate his work restrictions, both of which occurred in 1999, the year the suit was filed. LS&I appealed.

The Court of Appeals *held*:

The trial court erred in using the continuing tort theory rather than the discovery rule for starting the period of limitations. Federal substantive law for this case requires the use of the discovery rule, the affirmative duty on the plaintiff to exercise reasonable diligence to investigate the cause of a known injury, to determine the commencement of the period of limitations. The time of knowledge by the employer of the injury is irrelevant because the period of limitations, under the discovery rule, begins when the plaintiff knew or should have known that there was a causal connection between his employment and his injury. Because Hughes alleged that LS&I knew in 1984 of the chronic and ongoing neck and back problems and because Hughes suffered a knee injury in 1993, those claims are barred by the statute of limitations.

Reversed.

RAILROADS — FEDERAL EMPLOYER'S LIABILITY ACT — STATUTE OF LIMITATIONS — DISCOVERY RULE.

An action for damages for injuries suffered by a railroad company employee must be brought against the railroad company within three years of the time the employee knew or should have known

that there was a causal connection between his employment and his injury; the discovery rule creates an affirmative duty on the plaintiff to exercise reasonable diligence to investigate the cause of a known injury (45 USC 51 *et seq.*).

*Petrucelli & Petrucelli, P.C.* (by *Vincent R. Petrucelli* and *Jonny L. Waara*), for the plaintiff.

*Kendricks, Bordeau, Adamini, Chilman & Greenlee, P.C.* (by *William R. Smith*), for the defendant.

Before: WHITBECK, C.J., and GRIFFIN and BORRELLO, JJ.

PER CURIAM.

### I. OVERVIEW

Craig Hughes sued his employer, Lake Superior & Ishpeming Railroad Company (LS&I), under the Federal Employer's Liability Act (FELA)[1] for damages arising from work-related injuries. LS&I moved for summary disposition under MCR 2.116(C)(7) on the ground that the three-year statutory period of limitations began to run when Hughes discovered his work-related injuries. The trial court denied the motion after finding that LS&I committed a continuing tort by exposing Hughes to working conditions that continued to injure him. LS&I appeals the order denying summary disposition by leave granted. We conclude that the trial court should have applied the discovery rule, rather than the continuing tort theory, to determine when the cause of action accrued, and we therefore reverse.

### II. BASIC FACTS AND PROCEDURAL HISTORY

Hughes began working for LS&I as a track laborer in Marquette on June 1, 1972. Hughes's duties included

[1] 45 USC 51 *et seq.*

operating a rail jack, lifting and moving rail ties and rails, swinging sledgehammers and picks, and operating a snowplow. Hughes began complaining of work-related back and neck injuries and pain as early as 1976, and he eventually developed chronic neck, back, and arm pain.

In the early 1980s, Hughes sustained two particular work-related injuries that led him to file a negligence claim against LS&I under the FELA. On February 23, 1982, a co-worker struck Hughes in the face with a spike maul, causing cuts and bruises. On August 2, 1983, plaintiff injured his neck and back while turning eighty-pound rails piled on a front-end loader. In 1985, the parties settled the case for $30,000, in exchange for which Hughes signed a release of all claims arising from those injuries.

Hughes was eventually promoted to foreman, but his duties still involved manual labor. In late October or early November 1998, Hughes told his supervisor that he was concerned about the effect his job duties were having on his back and neck and asked that those duties be restricted, but he was told that manual labor was a job requirement. Hughes's last day of work for LS&I was March 1, 1999. On September 1, 1999, John L. Lehtinen, M.D., reported that there was no position available at LS&I that could accommodate his work restrictions.

In July 2001, Hughes filed a complaint alleging that LS&I negligently failed to provide a proper and safe work environment in violation of the FELA, causing him to suffer carpal tunnel syndrome and chronic neck and back injuries between June 1, 1972, and March 1, 1999. Hughes also claimed that LS&I was negligent in continuing to assign him strenuous tasks beyond his physical capacity even though LS&I had been aware of his injuries since July 1984.

LS&I moved for summary disposition, arguing that Hughes's claims were barred by the 1985 release and settlement, and by the FELA's three-year statute of limitations. LS&I asserted that Hughes knew that his injuries were work-related on September 17, 1993, at the latest. Noting that Hughes relied on the continuing tort theory, under which the statutory period of limitations only begins to run when the employer ceases to assign the employee to the job duties that caused the injuries, LS&I argued that the Sixth Circuit follows the discovery rule, meaning that the period of limitations began to run when a reasonable person should have known that he had incurred a work-related injury. LS&I further argued that courts only apply the continuing tort theory if the injury was latent or undiscoverable until after the FELA period of limitations had expired, which was not the case here.

In response, Hughes argued that the release did not bar suit for any other prior or later acts of negligence by LS&I because it only related to the injuries that occurred on February 23, 1982, and August 2, 1983. Moreover, Hughes asserted that under the continuing tort theory, when injury results from the employer's repeated negligence, a claim does not accrue until the employer ceases to assign the employee to duties that expose him to an unreasonable risk of harm. Thus, Hughes argued that the period of limitations did not begin to run until either March 1, 1999, the day he left work, or September 1, 1999, when Dr. Lehtinen reported that there was no position available to accommodate his work restrictions.

After hearing oral arguments on the motion, the trial court stated that because *Vaughan v Grand Trunk W R Co*[2] was "the last word in this state on the subject" of

---

[2] *Vaughan v Grand Trunk W R Co*, 153 Mich App 575; 396 NW2d 440 (1986).

the statute of limitations and that the law was unsettled in the federal system, it would apply the continuing tort theory under *Vaughan* and hold that statute of limitations did not bar Hughes's claim. As an alternative ground to support its decision, the trial court ruled that LS&I was arguably negligent for allowing Hughes to return to work in November 1998 after he told his boss that he was physically unable to continue working. Regarding the release argument, the trial court found that the release was not meant to include aggravation caused by future acts of negligence; it was only meant to cover future aggravations of the prior injuries. Moreover, in the trial court's opinion, it would be against public policy to allow a release from future negligent acts. Therefore, the trial court denied LS&I's motion for summary disposition.

### III. THE FELA'S STATUTE OF LIMITATIONS

#### A. STANDARD OF REVIEW

When a party files a FELA case in state court,[3] we apply federal substantive law[4] to adjudicate the claim while following state procedural rules.[5] Accordingly, we review the trial court's ruling on a motion for summary disposition de novo.[6] Whether a statute of limitations bars a cause of action is a question of law that we also review de novo.[7]

---

[3] *Norfolk & W R Co v Ayers*, 538 US 135, 141 n 1; 123 S Ct 1210; 155 L Ed 2d 261 (2003); 45 USC 56.

[4] *Monessen S R Co v Morgan*, 486 US 330, 335; 108 S Ct 1837; 100 L Ed 2d 349 (1988).

[5] *Gortney v Norfolk & W R Co*, 216 Mich App 535, 538; 549 NW2d 612 (1996).

[6] *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).

[7] *American Commercial Liability Ins Co v Aageson Thibo Agency*, 226 Mich App 336, 340-341; 573 NW2d 637 (1997).

B. LEGAL STANDARDS

LS&I moved for summary disposition under MCR 2.116(C)(7) on the ground that the FELA's three-year statute of limitations barred the claim. Under MCR 2.116(C)(7), neither party is required to file supportive material, but any documentation that is provided to the court must be admissible evidence.[8] The plaintiff's well-pleaded factual allegations must be accepted as true, and affidavits or other admissible documentary evidence will be construed in the plaintiff's favor unless contradicted by documentation submitted by the movant.[9]

C. THE FELA

The FELA makes common carrier railroads liable to employees who suffer work-related injuries caused by the railroad's negligence,[10] and it is the sole remedy available to railroad employees for injuries sustained while engaged in interstate commerce.[11] It provides, in relevant part:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.[12]

---

[8] *Maiden, supra* at 119.

[9] *Id.*; *Gortney, supra* at 538-539; MCR 2.116(G)(5).

[10] 45 USC 51; *Norfolk & W R Co v Ayers*, 538 US 135, 140; 123 S Ct 1210; 155 L Ed 2d 261 (2003).

[11] *Smith v Medical & Surgical Clinic Ass'n*, 118 F3d 416, 419 (CA 5, 1997).

[12] 45 USC 51.

Thus, by its terms, the FELA is a fault system, allowing plaintiffs to recover only for those work-related injuries that are caused by the employer's negligence.

The FELA provides that "[n]o action shall be maintained . . . unless commenced within three years from the day the cause of action accrued."[13] The question at issue in this case is whether Michigan courts should apply the discovery rule or the continuing tort theory to determine when a FELA cause of action accrues. We conclude that the Michigan case on which the trial court based its decision to apply the continuing tort theory is neither precedentially binding nor persuasive, and, therefore, hold that our state's courts must apply the discovery rule in determining whether a claim falls within FELA's statutory period of limitations.

### D. ORIGIN OF THE DISCOVERY RULE

The United States Supreme Court addressed how to determine when a FELA cause of action accrued in *Urie v Thompson*.[14] Urie had worked as a fireman on steam locomotives for approximately thirty years before he was diagnosed in 1940 with silicosis, a lung disease caused by breathing the dust that was created by the sand that the railroad used to give the locomotive wheels traction.[15] Urie sued under the FELA in 1941.

In determining whether Urie's cause of action was barred by the statute of limitations, the Court rejected the notion that Urie's claim should be barred because he may have had undiagnosed or asymptomatic silicosis over three years before he filed suit.[16] However, the

---

[13] 45 USC 56.

[14] *Urie v Thompson*, 337 US 163, 170; 69 S Ct 1018; 93 L Ed 1282 (1949).

[15] *Id.* at 165-166.

[16] *Id.* at 169.

Court also refused to adopt a rule that "each intake of dusty breath is a fresh 'cause of action' " for purposes of determining when the claim accrued.[17] Instead, the Court adopted the "discovery rule," under which an " 'afflicted employee can be held to be "injured" only when the accumulated effects of the deleterious substance manifest themselves . . . .' "[18] Stated another way, under the discovery rule, a period of limitations begins to run " 'when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.' "[19] As LS&I correctly points out, the majority of the United States Courts of Appeals, including the Sixth Circuit,[20] has applied the discovery rule to determine the actual accrual of a plaintiff's claim.[21]

### E. THE CONTINUING TORT THEORY

Hughes argues that this Court should apply the continuing tort theory, rather than the discovery rule, to determine whether his negligent assignment claim is barred by the statute of limitations. The continuing tort theory has been described as either an alternative or an exception to the discovery rule.[22] Under the continuing

---

[17] *Id.* at 170.

[18] *Id.* at 170, quoting *Associated Indemnity Corp v Industrial Accident Comm*, 124 Cal App 378, 381; 12 P2d 1075 (1932).

[19] *Matson v Burlington N S F R Co*, 240 F3d 1233, 1235 (CA 10, 2001), quoting *Industrial Constructors Corp v United States Bureau of Reclamation*, 15 F3d 963, 969 (CA 10, 1994).

[20] *Mounts v Grand Trunk W R Co*, 198 F3d 578, 580-581 (CA 6, 2000).

[21] See *Albert v Maine C R Co*, 905 F2d 541, 544 (CA 1, 1990); *Mix v Delaware & Hudson R Co*, 345 F3d 82, 86 (CA 2, 2003); *Kichline v Consolidated R Corp*, 800 F2d 356, 359 (CA 3, 1986); *Townley v Norfolk & W R Co*, 887 F2d 498, 501 (CA 4, 1989); *Dubose v Kansas City S R Co*, 729 F2d 1026, 1030 (CA 5, 1984); *Fries v Chicago & NW Transportation Co*, 909 F2d 1092, 1095 (CA 7, 1990); *Matson, supra* at 1235-1236.

[22] *Mounts, supra* at 583.

tort theory, " 'the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases.' "[23]

Application of the continuing tort theory to FELA claims has its origin in *Fowkes v Pennsylvania R Co*.[24] In *Fowkes*, a railroad worker sued after he developed arthritis from the repeated trauma to his shoulder caused by the use of an air hammer over the course of many years of employment. The Third Circuit concluded that the period of limitations did not begin to run before "the plaintiff was relieved of jolting work with the heavy hammer . . . ."[25]

In *Fletcher v Union Pacific R Co*,[26] the Eighth Circuit relied on *Fowkes* to find that continuing negligence could toll the FELA's statute of limitations. The plaintiff in *Fletcher* suffered a back injury in 1962, but the defendant railroad continued to assign him to heavy labor until 1973 despite the fact that the work caused him pain and further injuries, some of which required hospitalization.[27] The court held that the plaintiff's suit, which was filed in 1977, was barred with regard to the original 1962 injury, but not regarding the claim that the railroad negligently assigned him to work that was too strenuous for him to perform.[28]

The *Fletcher* court's interpretation of *Fowkes* was still generally accepted at the time this Court faced a similar issue in *Vaughan v Grand Trunk W R Co*. In *Vaughan*, the plaintiff sued the railroad for particular

---

[23] *Page v United States*, 234 US App DC 332, 335; 729 F2d 818 (1984) (citations omitted).

[24] *Fowkes v Pennsylvania R Co*, 264 F2d 397, 399 (CA 3, 1959).

[25] *Id.* at 399.

[26] *Fletcher v Union Pacific R Co*, 621 F2d 902, 907-908 (CA 8, 1980).

[27] *Id.* at 904-905.

[28] *Id.* at 907-908.

injuries he suffered in 1966, 1970, and 1971, as well as for negligently assigning him to work that he was not physically able to perform safely.[29] While the *Vaughan* Court held that the causes of action for the 1966-1971 injuries were barred by the statute of limitations, the Court held that, on the basis of the ruling in *Fletcher*, the negligent assignment claim could go forward because that claim did not accrue "until the railroad's ongoing allegedly tortious conduct ceased by taking plaintiff off the job."[30]

### F. ASSESSING *VAUGHAN*'S APPLICABILITY AND VIABILITY

Hughes maintains that, under the continuing tort theory as applied in *Vaughan*, his claim did not accrue until he left the employ of LS&I. However, subsequent decisions have cast serious doubt on the viability of *Vaughan*'s holding regarding the accrual of negligent assignment claims. As noted, *Vaughan* relied on *Fletcher* for the proposition that negligent assignment claims accrue when the employer stops assigning the plaintiff to duties alleged to be beyond the plaintiff's capacity.[31] *Fletcher*, in turn, had based its decision on *Fowkes*. After *Vaughan* was decided, however, the Third Circuit revisited its *Fowkes* decision in *Kichline v Consolidated R Corp*,[32] and effectively repudiated the notion that *Fowkes* had adopted the continuing tort theory.

In *Kichline*, the plaintiff learned that his pulmonary disease had been aggravated by exposure to diesel fumes at work, but he continued to work and did not file

---

[29] *Vaughan, supra* at 577-578.

[30] *Id.* at 578.

[31] See *id.*

[32] *Kichline, supra.*

suit under the FELA until more than three years later.[33] The *Kichline* court rejected the plaintiff's argument that, under *Fowkes,* the. defendant's conduct was a "continuing tort" during which the period of limitations did not start to run until the wrongful act ceased.[34] The *Kichline* court specifically distinguished *Fowkes* on the ground that the plaintiff in *Fowkes* was unaware that his injury existed for more than three years before the suit was filed.[35] Thus, according to *Kichline, "Fowkes* can be fairly read as implying that had identification of the injury and its cause occurred before employment terminated, the discovery of injury rather than the cessation of work would have marked the beginning of the limitations period."[36] The court explained that even in *Fowkes,* the court recognized that the continuing tort concept was "inapplicable on a showing that one of several similar traumatic incidents has in itself inflicted such serious or evident harm as fairly to be characterized as creating a cause of action and starting the running of the [period] of limitations."[37] The *Kichline* court concluded: "We understand *Fowkes* to mean that continuing conduct of defendant will not stop the ticking of the limitations clock begun when plaintiff obtained requisite information."[38]

Because *Vaughan* was issued before November 1, 1990, it is not precedentially binding on our Court.[39] In

---

[33] *Id.* at 359-360.

[34] *Id.* at 360.

[35] *Id.* at 359.

[36] *Kichline, supra* at 359.

[37] *Kichline, supra* at 360, quoting *Fowkes, supra* at 399.

[38] *Kichline, supra* at 360.

[39] See MCR 7.215(J)(1). We note that this Court implicitly recognized the continuing tort theory in *Oliver v Nat'l Gypsum Co, Cement Div,* 187 Mich App 610, 614; 468 NW2d 312 (1991); however, the Michigan Supreme Court later ruled that that decision had "no precedential force

light of the fact that the cases on which *Vaughan* relied for applying the continuing tort doctrine have been undermined by subsequent rulings, we conclude that the proper standard to determine the accrual of FELA claims is the discovery rule, as set forth in *Urie* and as followed by the majority of the federal circuit courts.

### G. APPLYING THE DISCOVERY RULE

The discovery rule imposes an affirmative duty on the plaintiff to exercise reasonable diligence to investigate the cause of a known injury.[40] The relevant inquiry under the discovery rule is when the plaintiff knew or should have known that there was a causal connection between his employment and his injury, not when he knew that the repetitive exposure to the cause was the specific cause of that injury.[41] Moreover, the employer's knowledge of the injury is irrelevant because the goal of the discovery rule is to encourage an employee to inform himself about his condition and promptly bring his claim.[42]

In this case, Hughes began complaining of work-related back and neck injuries and pain as early as 1976. In 1981 he was again treated for work-related injuries, and in 1983 he was specifically made aware that his muscular strain was caused by the "very physical nature" of his job. Our review of the record indicates that Hughes incurred his most recent work-related injury on September 17, 1993, when he injured his knee. Therefore, even viewing the evidence in the light most favorable to Hughes, he had knowledge of his injuries and

---

or effect." *Oliver v Nat'l Gypsum Co, Cement Div*, 447 Mich 999 (1994).

[40] *Matson, supra* at 1235.

[41] *Id.* at 1236.

[42] *Mounts, supra* at 583.

their causes more than seven years before filing suit. Under the discovery rule, Hughes has no claim for his injuries that occurred more than three years before the date on which he filed suit against LS&I.

Hughes argues that his negligent assignment claim is viable to the extent it stems from LS&I's refusal to grant him restricted work duties for his neck and back injuries in late 1998, because his request for accommodation occurred within the three-year limitations period. However, negligent assignment claims do not accrue when an employee requests accommodations, but rather when "the employer, knowing of an employee's partial disability, nevertheless assigns him to unsuitable work."[43] According to Hughes's complaint, LS&I knew of his "chronic neck and back injuries" and "ongoing chronic neck and back problems" beginning on July 5, 1984. Therefore, we conclude that this claim is also barred by the statute of limitations.

### IV. CONCLUSION

We conclude that the trial court erred in applying the continuing tort theory rather than the discovery rule. The discovery rule is the prevailing rule of law among the federal circuits, and we adopt it here. In light of our resolution of this issue, we need not address the effect of the release.

Reversed and remanded for the entry of an order granting LS&I summary disposition under MCR 2.116(C)(7). We do not retain jurisdiction.

---

[43] *Kichline, supra* at 361, citing *Fletcher, supra; Emmons v Southern Pacific Transportation Co*, 701 F2d 1112 (CA 5, 1983).