# STATE OF MICHIGAN

# COURT OF APPEALS

JASON REINEKE,

        Plaintiff-Appellee,

v

GRAND TRUNK WESTERN RAILROAD
COMPANY,

        Defendant-Appellant.

UNPUBLISHED
January 25, 2018

No. 331878
Wayne Circuit Court
LC No. 14-015048-NO

Before: JANSEN, P.J., and FORT HOOD and RIORDAN, JJ.

RIORDAN, J. (*dissenting*)

I dissent.

Contrary to the majority, I would follow our Supreme Court's direction that the trial court, and not this Court, is required to act as a gatekeeper pursuant to MRE 702 and MCL 600.2955. Unlike the majority, I refuse to take on that duty retrospectively. As the discussion of the Federal circuit split on the issue reveals, *infra*, the question presented to the trial court was not so cut and dry as plaintiff, and now the majority, would have us believe. If the trial court had engaged in the same in-depth reasoning as the majority now does – where it considers the facts, methods, and science underlying the doctors' trial testimony, and then applies the relevant law at issue to determine whether those opinions were reliable and, after doing that, and prior to the witnesses' testimony, then declares the testimony admissible – we would have been provided with a reviewable record. Instead, as the record now stands, the trial court improperly shirked its duty to act as a gatekeeper prior to the experts' testimony. For us to affirm the trial court, with a 20/20 hindsight approach, is improper. Allowing the trial court to ignore and abdicate its gatekeeper role in a case where the jury was obviously conflicted regarding the exact issue – causation – about which the experts' testimonies are challenged, is not in accordance with the law.

Pursuant to the Federal Employers' Liability Act (FELA), 45 USC 51 *et seq.*, I would vacate the trial court's judgment, reverse the trial court's orders permitting the expert opinion testimony regarding causation, and remand for further proceedings consistent with this dissent.

## I. BACKGROUND FACTS & PROCEDURAL HISTORY

Defendant, a railroad company, employed plaintiff as a train conductor. During plaintiff's course of employment, he discovered that some manual track switches and pin levers, which he was required to operate as part of his job duties, did not properly function. Specifically, some of the track switches were harder to pull than normal due to inadequate lubrication and some pin levers, which separated the train cars from one another, malfunctioned for reasons that are unclear in the record. When plaintiff confronted that malfunctioning equipment, he was required to use extra force, bent wrists, and irregular posture. Plaintiff reported that certain pin levers would jam, causing vibrations to travel through his hand and wrist. Over the course of a few years, plaintiff contends he developed bilateral carpal tunnel syndrome (CTS), which required surgery to correct. Plaintiff sued defendant under FELA, which is a federal statute enacted by the United States Congress "to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees." *Atchison, Topeka & Santa Fe R Co v Buell*, 480 US 557, 561; 107 S Ct 1410; 94 L Ed 2d 563 (1987).

Throughout the proceedings, defendant repeatedly challenged the expert opinion testimony of Dr. Manish Gupta and Dr. Steven Newman regarding causation pursuant to MRE 702, MCL 600.2955, and *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). Defendant argued that the doctors' opinions on causation arose from an insufficient factual foundation and from improper diagnostic methods, rendering it unreliable and inadmissible. Defendant made the same argument in a motion for summary disposition, a motion in limine to bar the doctors' causation opinion testimony at trial, an objection to the testimony immediately before it was presented to the jury, and in a motion for directed verdict. The trial court denied all of those motions without citation to MRE 702 or *Daubert*, and without considering any of the listed factors in MCL 600.2955.

After completion of the trial, the jury returned a verdict in favor of plaintiff, finding that defendant had negligently maintained the aforementioned equipment and that plaintiff's use of that equipment caused, at least in part, plaintiff's CTS. The jury awarded plaintiff $75,000 in damages and attributed 45% of plaintiff's damages to his own negligence. The trial court entered a judgment on that verdict and this appeal followed.

## II. EXPERT WITNESS TESTIMONY

Defendant argues that the trial court abused its discretion in permitting Dr. Gupta and Dr. Newman to testify regarding their expert opinions on causation. I agree that the trial court abused its discretion by abdicating its role as gatekeeper pursuant to MRE 702, but, unlike the majority, I would decline defendant's invitation to perform that duty for the trial court on appeal.

## A. STANDARD OF REVIEW & GENERAL LAW

"A trial court's evidentiary decisions, preserved for review, are reviewed for an abuse of discretion." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 541; 854 NW2d 152 (2014). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). "We review de novo questions of law underlying evidentiary rulings, including the interpretation of statutes and court rules." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). "The

admission or exclusion of evidence because of an erroneous interpretation of law is necessarily an abuse of discretion." *Id*.

While substantive issues in FELA cases are governed by federal law, "questions of procedure and evidence [are] to be determined according to the law of the forum." *Chesapeake & Ohio R Co v Kelly*, 241 US 485, 491; 36 S Ct 630; 60 L Ed 1117 (1916); see also *Hughes v Lake Superior & Ishpeming R Co*, 263 Mich App 417, 421; 688 NW2d 296 (2004). In Michigan, MRE 702 and MCL 600.2955 govern the admissibility of expert scientific testimony. MRE 702 sets out the requirements for the admission of expert testimony, and provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Pursuant to MRE 702, the trial court must function as a gatekeeper in making decisions regarding the admissibility of scientific evidence and ensuring that expert testimony meets that rule's standard of reliability. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 782; 685 NW2d 391 (2004), citing *Daubert*, 509 US 579. In addition, MCL 600.2955 provides:

> (1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:

> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.

> (b) Whether the opinion and its basis have been subjected to peer review publication.

> (c) The existence and maintenance of generally accepted standards for governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

> (d) The known or potential error rate of the opinion and its basis.

> (e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

The trial court "shall consider all of the factors listed in MCL 600.2955(1)." *Clerc v Chippewa Co War Mem Hosp*, 477 Mich 1067, 1068; 729 NW2d 221 (2007). The party offering the expert testimony has the burden of satisfying the preconditions established by MRE 702 and MCL 600.2955(1). *Gilbert*, 470 Mich at 781. In determining admissibility under the statutory standard, a court must consider the statutory factors, but not all of the facts need favor admissibility before the evidence may be admitted. Rather, the pertinent determination is whether a scientific opinion is rationally derived from a sound foundation. *Chapin v A & L Parts, Inc*, 274 Mich App 122, 127 (Opinion of the Court), 143 (METER, J., concurring); 732 NW2d 578 (2007). "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 US at 595.

In *Craig v Oakwood Hosp*, 471 Mich 67, 82; 684 NW2d 296 (2004) (emphasis added), the Michigan Supreme Court clarified that the trial court had an independent duty to fully evaluate the proposed expert testimony once challenged by an opposing party:

Under MRE 702, the trial court had an independent obligation to review *all* expert opinion testimony in order to ensure that the opinion testimony satisfied . . . that it was rendered by a "qualified expert," that the testimony would "assist the trier of fact," and, under the rules of evidence in effect during this trial, that the opinion testimony was rooted in "recognized" scientific or technical principles. These obligations applied irrespective of the type of expert opinion testimony offered by the parties. While a party may waive any claim of error by failing to call this gatekeeping obligation to the court's attention, *the court must evaluate expert testimony under MRE 702 once that issue is raised*.

Indeed, the Court, when considering a case where the trial court "did not consider the range of indices of reliability listed in MCL 600.2955[,]" remanded that case to the trial court to "complete the proper inquiry." *Clerc*, 477 Mich at 1068.

B. ANALYSIS

At trial, and now on appeal, defendant challenges the expert opinion testimony by Dr. Gupta and Dr. Newman regarding causation, a necessary element of a FELA claim. 45 USC 51. See also *CSX Transp, Inc v McBride*, 564 US 685, 703-704; 131 S Ct 2630; 180 L Ed 2d 637 (2011). With respect to Dr. Gupta, defendant directs this Court to testimony establishing that Dr. Gupta did not investigate the working conditions plaintiff complained about, i.e., Dr. Gupta did not know the frequency, duration, force, or posture actually required to operate the negligently maintained equipment. Further, Dr. Gupta could not identify any peer-reviewed study or experiment that linked a train conductor performing the jobs in question to the development of CTS, nor did Dr. Gupta specifically rule out plaintiff's obesity, hyperglycemia, prior injuries, or genetics as potential causes of the CTS. Dr. Gupta professed no knowledge regarding what

levels of repetition, force, posture, and duration that are required to cause CTS in an individual. Instead, Dr. Gupta offered the conclusory opinion that plaintiff's CTS was caused, at least in part, by the work duties in question based on a set of assumptions provided by plaintiff. Defendant moved the trial court to preclude Dr. Gupta from providing his opinion on causation because it did not rely on "sufficient facts or data" and was not the "product of reliable principles and methods." MRE 702.

Defendant challenged Dr. Newman's expert opinion regarding causation for similar reasons. Specifically, while Dr. Newman testified that he performed a differential diagnosis, which is an undisputed scientific method for determining causation, defendant argued that Dr. Newman's explanation of the actual methods he used belied that he properly performed such a procedure. Dr. Newman relied solely on plaintiff's testimony and medical records, and the deposition testimony of other expert witnesses. Dr. Newman did not meet with plaintiff or evaluate him in any manner. Further, like Dr. Gupta, Dr. Newman did not investigate the work site or cite any scientific literature regarding the causation of CTS. Consequently, Dr. Newman was not aware of the actual force, duration, frequency, and posture required to perform the challenged job duties. Dr. Newman's testimony reveals that he did not rule out genetics, tobacco use, or obesity as potential causes of plaintiff's CTS. Dr. Newman also stated that he did not rule out the possibility that the general work with properly operating equipment that plaintiff did every day could have also contributed to his development of CTS. Dr. Newman admitted that he was not aware that, beginning in 2011, plaintiff worked about half of his days as a union official, which did not require him to operate the malfunctioning equipment. Once again, defendant moved the trial court to preclude Dr. Newman from providing his opinion on causation because it did not rely on "sufficient facts or data" and was not the "product of reliable principles and methods." MRE 702.

Federal circuit court decisions in FELA cases considering the admissibility of similar testimony based on *Daubert* and its progeny conflict. See *Myers v Illinois Central R Co*, 629 F 3d 639 (CA 7, 2010); see also *Brown v Burlington Northern Santa Fe R Co*, 765 F 3d 765 (CA 7, 2014); but see *Hardyman v Norfolk & Western R Co*, 243 F 3d 255 (CA 6, 2001). Although not binding, those cases could have provided relevant guidance to the trial court on this issue, see *Kelly*, 241 US at 491, should it have chosen to act as a gatekeeper.

As noted, defendant moved the trial court several times to preclude the expert opinion testimony of Dr. Gupta and Dr. Newman regarding causation. In so doing, defendant relied on the aforementioned Seventh Circuit precedent. Even in light of those repeated arguments by defendant and the conflicting case law on the issue, the trial court flatly refused to address the requirements of Michigan law regarding its gatekeeper role in determining the admissibility of expert opinion testimony. The record reveals that the trial court repeatedly confused the lax standard for proof of causation in FELA cases[1] with the standard for admissibility of expert

---

[1] See *Consolidated Rail Corp v Gottshall*, 512 US 532, 543; 114 S Ct 2396; 129 L Ed 2d 427 (1994) (quotation marks omitted) (holding that pursuant to FELA, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.").

opinion testimony under MRE 702, *Daubert*, and MCL 600.2955. These are separate and distinct inquiries. See, e.g., *Hardyman*, 243 F 3d 255. During the hearing on defendant's motions for summary disposition, which relied, in part, on defendant's argument that Dr. Gupta's and Dr. Newman's expert opinions on causation were not admissible, the trial court repeatedly stated that the issue of causation, given the low FELA standard, was a fact question for the jury. Despite defendant's citation to MRE 702 and MCL 600.2955, the trial court did not consider the doctors' methodologies or factual support, applied neither the Sixth nor Seventh Circuit standard or anything similar, and did not address any of the factors listed in MCL 600.2955.[2]

The trial court had a chance to cure that error after defendant once again moved to preclude the testimony of the doctors on the same grounds, this time in a motion in limine. Upon hearing those arguments, the trial court provided the following reasoning for denying the motion in limine:

> But the thing is the fact of the matter remains that we'll leave the experts to make their opinions and then you make your appropriate arguments to the jury, but the Court isn't going to summarily not allow an expert to testify and, in this regard, solely on the basis that they didn't use the catchwords. Because the fact that the matter remains is anybody can feed them the catchwords to use to support that, but the Court is going to allow them to present their testimony and, whatever way it comes out, then the counsel can make their appropriate arguments to the jury, in order to create a level of credibility as to the different experts – medical experts that are going to testify.

The trial court's reasoning clearly exhibits its misunderstanding of its expert evidence gatekeeper responsibility under MRE 702, MCL 600.2955, and *Daubert*. The trial court stated that the jury would be able to determine the credibility of the expert witnesses, which is true, but ignores, like the majority now does, that the Michigan Supreme Court has held that the trial court itself has the independent duty to determine the reliability of an expert witness's opinion testimony before submitting that testimony to a jury. *Gilbert*, 470 Mich at 782.

Defendant attempted once again to alert the trial court to issues with the expert witnesses' opinion testimony at trial before the doctors' depositions were played to the jury. During oral

---

[2] The Seventh Circuit has held that expert opinion testimony regarding causation in similar cases is unreliable and inadmissible where the expert did not do an on-site work evaluation to test the force, frequency, duration, and posture of the complained of job duties, was not aware of any peer-reviewed study linking the profession in question to the development of the disease, and did not take active investigative steps to rule out specific possible non-work related causes. See *Myers*, 629 F 3d 639; see also *Brown*, 765 F 3d 765. In comparison, the Sixth Circuit permitted expert opinion testimony regarding causation where the experts relied on the plaintiff's description of a job that involved techniques that were known risk factors for a disease, that the plaintiff reported no other non-work activities that would have required similar techniques, and that well-established, undisputed medical studies support that the disease can be caused by those techniques. *Hardyman*, 243 F 3d 255.

argument while the jury was out of the courtroom, defendant specifically noted that plaintiff and the trial court, by considering the lax standard for proof of causation in FELA cases while deciding whether expert opinion testimony is admissible under Michigan law, were "mixing apples and oranges." In response, the trial court once again refused to address any factors from MCL 600.2955 and held that the doctors' were permitted to rely on hypotheticals for factual foundation before providing their medical opinion on causation.

Despite defendant's repeated arguments that Dr. Gupta and Dr. Newman did not have an adequate factual foundation to support their alleged methodologies, along with citation to relevant and supportive case law showing that previous similar testimony had been ruled unreliable and inadmissible, the trial court refused to engage in its role as a gatekeeper under MRE 702, MCL 600.2955, and *Daubert*. Once defendant raised the issue of admissibility, the trial court was not permitted to avoid the application of MRE 702. *Craig*, 471 Mich at 82.

Additionally, in such cases, the Legislature was clear and unambiguous when it stated that the trial court "shall" consider all of the factors listed in MCL 600.2955 before admitting expert opinion testimony. Shall means must. "The use of 'shall' in a statute generally indicates a mandatory and imperative directive." *Mich Ed Ass'n v Secretary of State*, 489 Mich 194, 218; 801 NW2d 35 (2011) (internal quotation marks omitted). Despite this clear legislative directive, the trial court failed to cite any of the factors listed in the statute. Further, the trial court's reasoning did not address any "scientific testing[,] replication," or "peer review[ed] publication[s]" regarding the proffered expert opinions. MCL 600.2955(a) and (b). The trial court did not consider whether there were "generally accepted standards governing the application and interpretation" of the methodology used by the doctors, nor did the trial court consider "whether the opinion and its basis [were] consistent with those standards." MCL 600.2955(c). The trial court did not comment on any "known or potential error rate," MCL 600.2955(d), whether and to what extent the doctors' expert opinions were "generally accepted within the relevant expert community," MCL 600.2955(e), whether other experts would have relied "on the same basis to reach the type of opinion being proffered," MCL 600.2955(f), nor whether "experts outside the context of litigation" would use the same methodology to reach the same opinion, MCL 600.2955(g). Instead, the trial court reasoned that the doctors could "present their testimony and, whatever way it comes out, then the counsel can make their appropriate arguments to the jury, in order to create a level of credibility as to the different experts[.]" The clear and unambiguous mandate of MCL 600.2955 and MRE 702 requires more than that.

In light of the trial court's abdication of its role as gatekeeper, our Supreme Court has held that the proper remedy is to remand to the trial court to properly perform its duty. *Clerc*, 477 Mich at 1068. For us to adopt the role meant for the trial court and decide in hindsight whether the doctors' testimonies were sufficiently reliable to be admissible is error, because "[t]he plain language of [MCL 600.2955] establishes the Legislature's intent to assign the *trial court* the role of determining, pursuant to the *Daubert* criteria, whether proposed scientific opinion is sufficiently reliable for jury consideration." *Greathouse v Rhodes*, 242 Mich App 221, 238; 618 NW2d 106 (2000) (emphasis in original), rev'd on other grounds 465 Mich 885 (2001).

This Court's analysis, however, does not end with the trial court's abdication of its gatekeeper role because "any error in the admission or exclusion of evidence will not warrant

appellate relief 'unless refusal to take this action appears . . . inconsistent with substantial justice,' or affects 'a substantial right of the [opposing] party.' " *Craig*, 471 Mich at 76, quoting MCR 2.613(A) and MRE 103(a). This Court has held that a party's substantial rights are affected where the outcome of the trial would have changed. *Hurt v Michael's Food Ctr, Inc*, 220 Mich App 169, 177-178; 559 NW2d 660 (1996). As discussed, had the trial court performed its gatekeeper duty, it may or may not have determined that the expert witnesses' opinion testimony regarding causation was admissible. Defendant insists that without the expert testimony, plaintiff failed to provide sufficient proof of causation to survive summary disposition and directed verdict. I do not believe that plaintiff's case *required* expert opinion testimony on causation to survive summary disposition and directed verdict to reach a jury.[3] However, "[t]o say that the evidence is sufficient to create a jury question does not mean, of course, that a jury will ultimately find that [defendant's] negligence caused [plaintiff's] injuries under the preponderance standard applicable when the case is submitted to the jury." *Aparicio v Norfolk & Western R Co*, 84 F 3d 803 (CA 6, 1996), abrogated on other grounds by *Reeves v Sanderson Plumbing Prod, Inc*, 530 US 133; 120 S Ct 2097; 147 L Ed 2d 105 (2000). The question remains, therefore, whether the jury hearing the doctors' testimony regarding causation affected a substantial right of defendant. See *Craig*, 471 Mich at 76.

As stated, the jury's decision regarding causation may, or may not, have changed if it had not heard testimony from Dr. Gupta and Dr. Newman regarding their expert opinions that the job duties performed with the malfunctioning equipment caused plaintiff's CTS. But, the trial court's failure in the instant case is particularly troublesome because "[c]areful vetting of all aspects of expert testimony is especially important when an expert provides testimony about causation." *Gilbert*, 470 Mich at 782. The Michigan Supreme Court has expressed concern that "ostensibly legitimate data may serve as a Trojan horse that facilitates the surreptitious advance of junk science and spurious, unreliable opinions." *Id*. at 783. Next, the jury's verdict in the present case revealed that its decision on causation was not without some doubt. Specifically, the jury's special verdict form declared that plaintiff's own negligence caused 45% of his injury. It is reasonable to expect that the same jury, considering the case without the doctors' expert medical opinions on causation, may have decided the issue differently. This is especially true due to the Michigan Supreme Court's heightened concern about expert opinion testimony on the issue of causation. See *id*.

Given that the correction of the trial court's error possibly could have led to a change in the trial's outcome, I see no option but to vacate the judgment of the trial court and remand for a new trial after the trial court properly performs its role as gatekeeper. See *Hurt*, 220 Mich App at 177-178.

---

[3] See *Tufariello v Long Island R Co*, 458 F 3d 80, 88 (CA 2, 2006) (internal quotations omitted) (holding that expert testimony regarding causation is not required in FELA cases where "there is a generally understood causal connection between physical phenomena . . . and the alleged injury that would be obvious to laymen."); see also *Hardyman*, 243 F 3d at 269 (holding that expert opinion testimony regarding causation was not required in a FELA case involving CTS).

## III. CONCLUSION

The trial court abused its discretion when it entirely abdicated its independent duty to act as the gatekeeper in the instant case. See *Craig*, 471 Mich at 82. Had the trial court found that evidence inadmissible, the jury's decision regarding causation may have differed. *Hurt*, 220 Mich App at 177-178.[4]

Contrary to the suggestion by the majority, I do not believe that it is a foregone conclusion that Dr. Gupta's and Dr. Newman's expert opinion testimony regarding causation is inadmissible, unreliable, or "masquerading as science." Instead, I would remand for the trial court to perform its duty as gatekeeper in the first instance, as statutory and binding case law requires, and allow it to make that decision. MRE 702; MCL 600.2955; *Clerc*, 477 Mich at 1068. In ignoring these mandates, the majority has deigned to take that role for itself and provide post-hoc rationale for admitting the expert opinion testimony based on an incomplete and insufficient record to do so.[5]

Thus, I would reverse the trial court's orders denying defendant's motions to preclude the expert opinion testimony of Dr. Gupta and Dr. Newman regarding causation, vacate the judgment of the trial court on the jury's verdict, and remand for the trial court to perform its role as gatekeeper and for further proceedings consistent with this opinion.

/s/ Michael J. Riordan

---

[4] Given that I would vacate the judgment and remand for the trial court to consider the expert opinion testimony of Dr. Gupta and Dr. Newman, the remaining issues would be rendered moot. After properly exercising its role as gatekeeper, the trial court would then consider any motion for summary disposition brought by defendant, with or without the benefit of the expert witness testimony, motion for a new trial, or a motion for directed verdict. The trial court would also then consider what jury instructions are proper given the evidence and argument elicited at that trial.

[5] I am perplexed by the majority's suggestion that I have somehow erred in failing to cite *Dixon v Grand Trunk Western R Co*, 259 F Supp 3d 702 (ED Mich, 2016). First, the United States District Court's decision in *Dixon*, in relevant part, relies almost entirely on *Hardyman*, 243 F 3d 255, which I cite extensively for the proposition that a Federal Circuit split exists regarding treatment of expert witness opinion testimony in cases similar to the present one. Therefore, I am not surprised that the Eastern District of Michigan Court in *Dixon*, being bound by the Sixth Circuit's decision in *Hardyman*, performed its gatekeeper role correctly, albeit while ruling on a motion for summary judgment. Second, while this Court and the trial court are not bound by *Hardyman* or *Dixon*, I would note that the trial court and the majority would be well-served to use the *Dixon* opinion as a model for the proper role of a trial court as a gatekeeper for expert witness testimony.